Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
Matthew T. Salzmann (MS 8403)
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Phone (212) 715-1000
Fax (212) 715-1399

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



------------------------------------------------------- x

CARTIER, a division of RICHEMONT NORTH
AMERICA, INC., CARTIER
INTERNATIONAL, N.V., CARTIER
CREATION STUDIO, S.A., VAN CLEEF &
ARPELS S.A., VAN CLEEF & ARPELS, INC.,
VAN CLEEF & ARPELS DISTRIBUTION,
INC., GUCCI AMERICA, INC., and BULGARI
S.p.A.,

                   Plaintiffs,

             - against -

ELENA CASTANEDA d/b/a
OVERSTOCKJEWELER.COM,

                Defendant.

------------------------------------------------------- x

**07 CIV 7862**

Civil Action No.

**COMPLAINT**

Plaintiffs, by and through their undersigned attorneys, complain of defendant Elena

Castaneda d/b/a Overstockjeweler.com ("Overstock"), and allege as follows:

## NATURE OF THE ACTION

1.    Plaintiffs seek injunctive relief and damages for acts of trademark infringement,

copyright infringement, trade dress infringement, design patent infringement, false designation

of origin, false advertising, unfair competition, and unfair and deceptive trade practices, engaged

in by Overstock in violation of the laws of the United States and the State of New York.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and

1338 and 15 U.S.C. § 1121. Plaintiffs' claims are predicated upon the Copyright Act of 1976, as

amended, 17 U.S.C. § 101 et seq., the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et

seq., the U.S. Patent Laws, as amended, 35 U.S.C. § 271 et seq., and substantial and related

claims under the statutory and common law of the State of New York.

3.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§

1391(b) and (c) and 1400(a) and (b), because Overstock is subject to personal jurisdiction within

this judicial district and/or because a substantial part of the events giving rise to these claims

occurred within this judicial district.

## THE PARTIES

4.     Plaintiff Cartier, a division of Richemont North America, Inc., is a corporation

organized and existing under the laws of the State of Delaware, having its executive offices and

principal place of business at 653 Fifth Avenue, New York, New York.  Cartier, a division of

Richemont North America, Inc., is the exclusive distributor and licensee of Cartier brand

products in the United States.

5.     Plaintiff Cartier International, N.V., is a corporation organized and existing under

the laws of the Netherlands Antilles, having its principal place of business at Scharlooweg, 33

Curacao, Netherlands Antilles.

6.     Plaintiff Cartier Creation Studio, S.A., is a corporation organized and existing

under the laws of Switzerland, having its principal place of business at 8, Boulevard James-Fazy,

Geneva, Switzerland.  For purposes of this Complaint, except where specified, plaintiffs Cartier,

2

a division of Richemont North America, Inc., Cartier International, N.V. and Cartier Creation Studio, S.A. are hereinafter referred to collectively as "Cartier".

7.    Plaintiff Van Cleef & Arpels S.A., is a corporation organized and existing under the laws of Switzerland, having a principal place of business at 8 Rue des Biches, 1752 Villars-sur-Glane, Switzerland.

8.    Plaintiff Van Cleef & Arpels, Inc., is a corporation organized and existing under the laws of the State of New York, having a principal place of business at 12 West 57th Street, 6th Floor, New York, New York. Van Cleef & Arpels, Inc. is a licensed importer of Van Cleef & Arpels brand products, and is the exclusive licensee for the sale of such products at retail in the United States.

9.    Plaintiff Van Cleef & Arpels Distribution, Inc., is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 12 West 57th Street, New York, New York. Van Cleef & Arpels Distribution, Inc. is a licensed importer of Van Cleef & Arpels brand products, and is the exclusive licensee for the sale of such products at wholesale in the United States. For purposes of this Complaint, except where specified, plaintiffs Van Cleef & Arpels S.A., Van Cleef & Arpels, Inc. and Van Cleef & Arpels Distribution, Inc. are hereinafter referred to collectively as "Van Cleef".

10.    Plaintiff Gucci America, Inc. ("Gucci") is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 685 Fifth Avenue, New York, New York.

11.    Plaintiff Bulgari S.p.A. ("Bulgari") is an Italian corporation with its principal place of business at Lungotevere Marzio, 11, Rome Italy.

3

12.     Upon information and belief, Overstock is a sole proprietorship and maintains places of business at 351 East 84th Street, New York, New York and 1328 Broadway, New York, New York.

## THE CARTIER BRAND AND BUSINESS

13.     Cartier is a world famous supplier of fine jewelry and luxury watches sold under the CARTIER brand name.

14.     In 1847, Master jeweler Louis Francois Cartier founded the House of Cartier in Paris, France. Since as early as 1847, Cartier and its predecessors-in-interest and associated companies have been utilizing the CARTIER brand name, trademarks, and designs in connection with the advertising, promotion and sale of fine jewelry and luxury watches around the world. Since 1909, the CARTIER brand name, trademarks, and designs have been used in connection with the advertising, promotion and sale of fine jewelry and luxury watches in the United States and the State of New York, including at its internationally famous retail store located on Fifth Avenue in New York City.

15.     Cartier jewelry and watches have distinctive and original designs, design elements and features that have become synonymous with Cartier in the eyes of the public, consumers and the luxury goods industry.

16.     Cartier products are marketed to fashion-conscious consumers and are sold only in Cartier-owned stores, at authorized specialty retail stores, in authorized high-end department stores, and through Cartier's own website. Cartier jewelry and watches are world-acclaimed and regarded as a global symbol of fashion, luxury and prosperity.

17.     Among Cartier's most important assets is the intellectual property associated with the CARTIER brand. Specifically, Cartier owns numerous U.S. trademark registrations for the CARTIER brand name, as well as collection and other marks used to identify the jewelry and

4

watch designs that it markets and sells. Cartier also owns U.S. and/or French copyright registrations covering many of its unique and innovative jewelry and watch designs. Finally, Cartier is the owner of design patents covering certain of its unique jewelry and watch designs.

## THE CARTIER TRADEMARKS

18.     Among the trademarks owned and used by Cartier is the famous CARTIER trademark. The CARTIER trademark is the subject of U.S. Trademark Registration No. 759,201, registered on October 29, 1963, for watches and clocks, and U.S. Trademark Registration No. 759,202, registered on October 29, 1963, for articles of jewelry for personal wear, not including watches (hereinafter collectively referred to as the "CARTIER House Mark").

19.     In addition to the famous CARTIER House Mark, Cartier owns, and has registered and/or applied for registration, additional well-known trademarks (both word marks and design marks) used to identify the source of the jewelry and watch designs that it sells. These trademarks are the subject of registrations on the Principal Register of the United States Patent and Trademark Office, including the following:

(a)     U.S. Trademark Registration No. 1,005,286, registered on February 25, 1975, for the word mark LOVE BRACELET, for bracelets;

(b)     U.S. Trademark Registration No. 1,372,423, registered on November 26, 1985, for a design consisting of a series of simulated screws that encircle the goods for bracelets;

(c)     U.S. Trademark Registration No. 1,927,987, registered on October 17, 1995, for the word mark TRINITY, for jewelry made of precious metal or coated therewith;

(d)     U.S. Trademark Registration No. 2,322,769, registered on February 29, 2000, for the configuration of a jewelry clasp for watches and jewelry;

5

(e)     U.S. Trademark Registration No. 2,346,941, registered on May 2, 2000, for the word mark PANTHERE (the English translation is PANTHER), for jewelry;

(f)     U.S. Trademark Registration No. 2,436,100, registered on March 20, 2001, for a design consisting of two sets of equidistant perpendicular lines that form a three-dimensional grille pattern overlaying the face of a watch for chronometers, watches and clocks;

(g)     U.S. Trademark Registration No. 2,566,458, registered on May 7, 2002, for the word mark LANIERES, for ashtrays, boxes and cases for watches, jewelry and cigarettes, coffee and tea services, candlesticks, cuff-links, pill-boxes, powder compacts sold empty, and serving trays, all of these made of precious metals or coated therewith; jewelry, precious gemstones; chronometers, clocks and watches;

(h)     U.S. Trademark Registration No. 2,699,360, registered on March 25, 2003, for the word mark AGRAFE, for ashtrays, boxes and cases for watches, jewelry and cigarettes, coffee and tea services, candlesticks, cuff-links, pill-boxes, powder compacts, salt and sugar containers, trays for household purposes, all of these made of precious metals or coated therewith; jewelry, precious gemstones; chronometers, clocks and watches;

(i)     U.S. Trademark Registration No. 3,006,779, registered on October 18, 2005, for the word mark TANK, for jewelry, such as bracelets, brooches, charms, cuff-links, earrings, necklaces and rings;

(j)     U.S. Trademark Registration No. 3,114,431, registered on July 11, 2006, for the word mark PASHA, for precious metals and their alloys and goods in precious metals or coated therewith, namely boxes of precious metal for watches and jewelry and watch straps; jewelry, precious stones; horological and chronometric instruments, namely watches, chronometers, and clocks;

6

(k)     U.S. Trademark Registration No. 3,162,410, registered on October 24, 2006, for the configuration of a simulated head of a screw that is imbedded in the goods;

(l)     U.S. Trademark Registration No. 3,211,585, registered on February 20, 2007, for the word mark TANKISSIME, for cuff links, tie pins, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watchbands, boxes of precious metal for watches and jewelry, in class 14;

(m)     U.S. Trademark Registration No. 3,282,847, registered on August 21, 2007, for a configuration of a watch case with a square face;

(n)     U.S. Trademark Registration No. 3,282,846, registered on August 21, 2007, for a configuration of a watch case with a square face; and

(o)     U.S. Trademark Application Serial No. 79037955, filed on June 30, 2006, for a configuration of simulated screws.

20.     The foregoing Cartier trademarks shall be hereinafter referred to as the "Cartier Product Marks". The CARTIER House Mark and the Cartier Product Marks shall be hereinafter collectively referred to as the "Cartier Trademarks".

21.     The foregoing trademark registrations are in full force and effect, and U.S. Trademark Registration Nos. 759,201; 759,202; 1,005,286; 1,372,423; 1,927,987; 2,322,769; 2,346,941; 2,436,100; and 2,566,458 have achieved incontestable status pursuant to 15 U.S.C. § 1065. Copies of the registration certificates and pending applications for the Cartier Trademarks are attached hereto as Exhibit A.

22.     Cartier has extensively advertised and promoted the products manufactured, sold and offered for sale under the Cartier Trademarks. The Cartier Trademarks immediately indicate

Cartier as the exclusive source of products to which they are affixed, and signify goodwill of incalculable value.

## THE CARTIER COPYRIGHTED DESIGNS

23.    Cartier also owns U.S. copyright registrations covering many of its unique and innovative jewelry and watch designs, including U.S. Copyright Registration No. VA-1-130-790, issued on August 9, 2001, for Cartier's Agrafe bracelet design.

24.    Cartier owns all right, title and interest to U.S. Copyright Registration No. VA-1-130-790 (the "Cartier U.S. Copyrighted Design"), which constitutes original and copyrightable subject matter under the Copyright Act.

25.    Cartier has duly complied with all relevant requirements of the Copyright Act with respect to the Cartier U.S. Copyrighted Design.  A copy of the registration certificate for the Cartier U.S. Copyrighted Design is attached hereto as Exhibit B.

26.    In addition, Cartier Creation Studio, S.A. owns French copyrights for many of its unique and innovative jewelry and watch designs.

27.    Pursuant to the Berne Convention, of which both the United States and France are signatories, Cartier Creation Studio, S.A. is permitted to enforce its French copyrights (the "Cartier French Copyrighted Designs") in the United States.

28.    A chart depicting photos of certain Cartier designs covered by the Cartier French Copyrighted Designs is attached hereto as Exhibit C.  The Cartier U.S. Copyrighted Design and the Cartier French Copyrighted Designs are hereinafter collectively referred to as the "Cartier Copyrighted Designs".

## THE CARTIER DESIGN PATENTS

29.    Cartier also owns U.S. design patents covering many of its unique and innovative jewelry and watch designs.

30.    Among the U.S. design patents owned by Cartier are the following:

(a)    Design Patent No. D388,332, issued on December 30, 1997, for a unique and innovative watch bracelet design;

(b)    Design Patent No. D424,967, issued on May 16, 2000, for a unique and innovative ring design;

(c)    Design Patent No. D497,567, issued on October 26, 2004, for a unique and innovative bracelet design;

(d)    Design Patent No. D538,194, issued on March 13, 2007, for a unique and innovative ring design; and

(e)    Design Patent No. D543,130, issued on May 22, 2007, for a unique and innovative pendant design.

31.    The foregoing design patents shall be hereinafter referred to collectively as the "Cartier Design Patents". Copies of the Cartier Design Patents are attached hereto as Exhibit D.

32.    Cartier is the owner of the entire right, title and interest in the Cartier Design Patents.

33.    The Cartier Design Patents are in full force and effect.

### THE VAN CLEEF BRAND AND BUSINESS

34.    Van Cleef is a world famous supplier of fine jewelry and luxury watches sold under the VAN CLEEF & ARPELS brand name.

35.    Ten years following the 1896 marriage of Estelle Arpels and Alfred Van Cleef, Alfred and his brother-in-law founded Van Cleef & Arpels and opened a boutique at 22 Place Vendôme in Paris, France.

9

36.    Since its inception, Van Cleef has set new standards for designing and marketing fine jewelry and luxury watches, including the introduction of innovative and significant jewelry and watch designs.

37.    Van Cleef and its predecessors-in-interest and associated companies have been utilizing the VAN CLEEF & ARPELS brand name, trademarks, copyrights and trade dress in connection with the advertising, promotion and sale of fine jewelry and luxury watches for over 100 years.

38.    Van Cleef products epitomize high fashion and luxury, and are marketed and sold to fashion-conscious consumers only in Van Cleef company-owned stores, in authorized specialty retail stores, and in authorized high-end department stores.

39.    Among Van Cleef's most important assets is the intellectual property associated with the Van Cleef products. Specifically, Van Cleef owns several U.S. trademark registrations for the VAN CLEEF & ARPELS brand name, as well as collection and other marks used to identify the collections of jewelry and watch designs that it markets and sells. Van Cleef also owns French copyrights covering many of its unique and innovative jewelry and watch designs. Further, Van Cleef is the owner of all rights in and to its unique and distinctive jewelry and watch designs, including rights in the trade dress thereof.

### THE VAN CLEEF TRADEMARKS

40.    Among the trademarks owned and used by Van Cleef is the famous VAN CLEEF & ARPELS word mark. The VAN CLEEF & ARPELS word mark is the subject of U.S. Trademark Registration No. 2,936,247, registered on March 29, 2005, for "items made of precious metal, namely, rings, bracelets, earrings, necklaces, pendants, charms, brooches, clips, hairclips, jewelry boxes, jewelry cases, tie clips, cufflinks, shirt studs, watch bracelets and buckles, jewelry, watches and clocks".

10

41.     In addition to the famous VAN CLEEF & ARPELS word mark, Van Cleef owns, and has registered, among others, the word mark ALHAMBRA, which is the subject of U.S. Trademark Registration No. 2,751,878, registered on August 19, 2003, for "precious metal and their alloys and products made thereof or coated therewith not included in other classes, namely, jewelry, precious gemstones, horological and chronometric instruments namely watches and watch bracelets and clocks, necklaces, jewelry chains of precious metal, brooches, earrings, jewelry rings, pendants, ankle bracelets, cuff links, studs and tie fasteners made of precious metal, hair accessories made of precious metal namely jewelry, boxes and trunks in precious metal namely jewelry boxes and decorative boxes made of precious metal, urns made of precious metal, belt buckles made of precious metal, money clips in precious metal, and keys and key rings made of precious metal".

42.     The foregoing trademark registrations are in full force and effect, and copies of the registration certificates therefor are attached hereto as Exhibit E.  The VAN CLEEF & ARPELS and ALHAMBRA marks are hereinafter collectively referred to as the "Van Cleef Trademarks".

43.     Van Cleef has extensively advertised and promoted the products manufactured, sold and offered for sale under the Van Cleef Trademarks.  The Van Cleef Trademarks immediately indicate Van Cleef as the exclusive source of products to which they are affixed, and signify goodwill of incalculable value.

44.     In addition to the Van Cleef Trademarks, Van Cleef makes widespread and exclusive use of Van Cleef's iconic Alhambra motif (the "Alhambra Design").  The Alhambra Design, as depicted below, has also become synonymous with Van Cleef through extensive use, sales, promotion and consumer recognition.

11



45.    Van Cleef has extensively advertised and promoted jewelry and watch products bearing the Alhambra Design, and has achieved substantial sales success.

46.    The Alhambra Design is inherently distinctive. In addition, the consuming public has come to recognize the Alhambra Design as distinctive of Van Cleef's jewelry and watch products and as an indicator of Van Cleef as the source of such products. The Alhambra Design, accordingly, immediately identifies Van Cleef as the exclusive source of products bearing the design, and signifies goodwill of incalculable value.

## THE VAN CLEEF COPYRIGHTED DESIGN

47.    In addition to the Van Cleef Trademarks, Van Cleef owns French copyrights for many of its unique and innovative jewelry and watch designs.

48.    Pursuant to the Berne Convention, of which both the United States and France are signatories, Van Cleef is permitted to enforce its French copyrights in the United States.

49.    Van Cleef owns a French copyright for its unique and innovative Envol design, which encompasses a unique butterfly design (the "Van Cleef Envol Copyrighted Design").

## THE VAN CLEEF TRADE DRESS DESIGNS

50.    In addition to the Van Cleef Trademarks, the Alhambra Design, and the Van Cleef Envol Copyrighted Design, Van Cleef is the owner of the protectable trade dress in many of its unique and distinctive jewelry and watch designs, which designs have come to signify to consumers that Van Cleef is the source of the products comprising or consisting of such designs.

12

51.     Among Van Cleef's unique and distinctive jewelry designs are designs consisting of or comprising the following design elements:

(a)     The Alhambra Design framed in a beaded setting of yellow or grey gold and incorporated into a necklace chain as a solitary pendant;

(b)     The Alhambra Design framed in a beaded setting of yellow or grey gold and incorporated into a bracelet chain and spaced at equal or nearly equal intervals;

(c)     The Alhambra Design framed in a beaded setting of yellow or grey gold, with either a droplet of yellow or grey gold, or a diamond placed in the center of the design, incorporated into a necklace chain and spaced at equal or nearly equal intervals;

(d)     The Alhambra Design framed in a beaded setting of yellow or grey gold, with either a droplet of yellow or grey gold, or a diamond placed in the center of the design, incorporated into solitary earclips;

(e)     The Alhambra Design framed in a beaded setting of yellow or grey gold and incorporated into solitary earclips;

(f)     The Alhambra Design framed in a beaded setting of yellow or grey gold and incorporated into a necklace chain and spaced at equal or nearly equal intervals; and

(g)     The Alhambra Design framed by pave diamonds and incorporated into the face of a ladies watch.

52.     The foregoing designs shall be hereinafter referred to collectively as the "Van Cleef Trade Dress Designs". Depictions of the Van Cleef Trade Dress Designs in the order set forth above are attached hereto as Exhibit F.

53.     Each of the Van Cleef Trade Dress Designs is, in and of itself, a highly distinctive combination of design elements. In addition, the Van Cleef Trade Dress Designs have acquired

13

distinctiveness as a result of the uninterrupted promotion and sale, and accordingly have acquired secondary meaning as indicators of Van Cleef as the exclusive source of the Van Cleef Trade Dress Designs, and signify goodwill of incalculable value.

54.     The Van Cleef Trade Dress Designs are non-functional.

## THE GUCCI BRAND AND BUSINESS

55.     Gucci is the owner of, and the sole and exclusive distributor of fine jewelry and luxury watches sold under the world famous GUCCI brand name in the United States.

56.     The GUCCI brand has become synonymous with luxurious and elegant products and services. Moreover, the brand owners of the GUCCI brand have long been recognized as worldwide leaders in the design, marketing and distribution of premium, high quality products, including fine jewelry and luxury watches. Consumers and the trade instantly identify Gucci as the source of all products bearing the GUCCI name and trademarks.

57.     Among Gucci's most important assets is the intellectual property associated with the GUCCI brand. Specifically, Gucci owns numerous U.S. trademark registrations for the GUCCI brand name and other collection names used to identify the jewelry and watch designs that it markets and sells.

58.     Gucci also owns U.S. copyright registrations covering many of its unique and innovative jewelry and watch designs.

## THE GUCCI TRADEMARKS

59.     Among the trademarks owned and used by Gucci is the famous GUCCI trademark. The GUCCI trademark is the subject of U.S. Trademark Registration No. 959,338, registered on May 22, 1973, for watches, U.S. Trademark Registration No. 1,200,991, registered on July 13, 1982, for bracelets, rings, necklaces, cufflinks, pendants, pins, money clips, keyrings, and pill boxes, all made wholly or in part of precious metal, and U.S. Trademark Registration

14

No. 1,340,599, registered on June 11, 1985, for earrings, collar bars and tie bars made wholly or in part of precious metal.

60.     In addition to the famous GUCCI word mark, Gucci owns, and has registered, among others, a stylized letter G trademark, which is the subject of U.S. Trademark Registration No. 2,234,272, registered on March 23, 1999, for watches and clocks.

61.     The foregoing trademark registrations are in full force and effect, and copies of the registration certificates therefor are attached hereto as Exhibit G. The GUCCI word mark and the stylized letter G mark are hereinafter collectively referred to as the "Gucci Trademarks".

62.     Gucci has extensively advertised and promoted the products manufactured under the Gucci Trademarks. The Gucci Trademarks immediately indicate Gucci as the exclusive source of products to which they are affixed, and signify goodwill of incalculable value.

63.     In addition to the Gucci Trademarks, Gucci makes widespread and exclusive use of a unique horsebit design (the "Horsebit Design"). The Horsebit Design, as depicted below, has also become synonymous with Gucci through extensive use, sales, promotion and consumer recognition.



64.     Gucci has extensively advertised and promoted jewelry and watch products bearing the Horsebit Design, and has achieved substantial sales success.

65.     The Horsebit Design is inherently distinctive. In addition, the consuming public has come to recognize the Horsebit Design as distinctive of Gucci's jewelry and watch products

and as an indicator of Gucci as the source of such products. The Horsebit Design, accordingly, immediately identifies Gucci as the exclusive source of products bearing the design, and signifies goodwill of incalculable value.

## THE GUCCI COPYRIGHTED DESIGNS

66.    Gucci also owns U.S. copyright registrations covering many of its unique and innovative jewelry and watch designs.

67.    Among the U.S. copyright registrations owned by Gucci protecting its unique and distinctive jewelry and watch designs are the following:

(a)    U.S. Copyright Registration No. VA-1-375-802, issued on February 7, 2006, for Gucci's Fall Winter 2005 Jewelry Collection; and

(b)    U.S. Copyright Registration No. VA-1-395-947, issued on January 29, 2007, for Gucci's Spring Summer 2007 Jewelry Collection.

68.    The foregoing copyrighted jewelry designs shall be hereinafter referred to collectively as the "Gucci Copyrighted Designs". Copies of the registration certificates for the Gucci Copyrighted Designs are attached hereto as Exhibit H.

69.    Gucci owns all right, title and interest to the Gucci Copyrighted Designs, which constitute original and copyrightable subject matter under the Copyright Act.

70.    Gucci has duly complied with all relevant requirements of the Copyright Act with respect to the Gucci Copyrighted Designs.

## THE BULGARI BRAND AND BUSINESS

71.    Bulgari was founded by Sotirio Bulgari in 1884. In 1905, Sotirio Bulgari, along with his sons Costantino and Giorgio, opened a shop in via Condotti, where the Bulgari flagship store is located today.

16

72.     From its modest beginnings, Bulgari has grown to become one of the world's largest jewelers. The BVLGARI and BULGARI trademarks, used in this country for fine jewelry products since 1970 and for luxury watches since 1977, have become synonymous with luxurious and elegant products and services.

73.     Bulgari stores in New York City are located at exclusive locations at 730 Fifth Avenue and 783 Madison Avenue. New York City was Bulgari's first international retail location. The BVLGARI brand is now highly successful and well known throughout the United States.

74.     Among Bulgari's most important assets is the intellectual property associated with the BVLGARI brand. Specifically, Bulgari owns numerous U.S. trademark registrations for the BVLGARI and BULGARI brand names, as well as other marks used to identify the jewelry and watch designs that it markets and sells. Bulgari also owns U.S. copyright registrations covering many of its unique and innovative jewelry and watch designs. Finally, Bulgari is the owner of design patents covering certain of its unique jewelry and watch designs.

## THE BULGARI TRADEMARKS

75.     Among the trademarks owned and used by Bulgari are the famous BVLGARI and BULGARI marks. Bulgari is well known for its use of the letter "v" that appears consistently in the trademark BVLGARI. This letter is actually a Roman "u", and the trademark is pronounced "BULGARI", as if it contained an English "u". Thus, the BVLGARI brand is well-known for using both spellings: "BVLGARI" and "BULGARI".

76.     The BVLGARI and BULGARI marks are the subject of numerous U.S. Trademark Registrations, including without limitation, U.S. Trademark Registration No. 1,184,684, registered on January 5, 1982, for, among other things, "earrings, bracelets, broaches, rings, necktie pins, buckles, cufflinks, necklaces, all made of precious metals and precious or

17

semi-precious stones" and wristwatches; U.S. Trademark Registration No. 1,736,428, registered on December 1, 1992, for jewelry; U.S. Trademark Registration No. 2,102,804, registered on October 7, 1997, for "retail store services featuring jewelry, watches, knives and spoons, pens, clocks, gift items and perfumery"; and U.S. Trademark Registration No. 2,783,515, registered on November 18, 2003, for retail shops and point-of-sale services featuring, among other things, jewelry and watches (collectively the "BVLGARI House Marks").

77.    In addition to the famous BVLGARI House Marks, Bulgari owns, and has registered and/or applied to register, other well-known trademarks used to identify the source of the jewelry and watch designs that it sells. Among these trademarks are the following marks that are the subject of registrations or applications to register on the Principal Register of the United States Patent and Trademark Office:

(a)    U.S. Trademark Registration No. 2,837,806, registered on May 4, 2004, for the word mark B.ZEROL, for "precious metals and their alloys and goods in precious metals or coated therewith; jewelry; rings, pendants, dangling trinkets, medals; horological and chronometric instruments"; and

(b)    U.S. Trademark Application Serial No. 79034170, filed on November 9, 2006, for the word mark PARENTESI, for, among other things, "earrings, cufflinks, bracelets, charms of precious metal, brooches, necklaces, [and] ankle chains".

78.    The foregoing Bulgari trademarks shall be hereinafter referred to collectively as the "Bulgari Product Marks". The BVLGARI House Marks and the Bulgari Product Marks shall be hereinafter collectively referred to as the "Bulgari Trademarks".

79.    The foregoing U.S. trademark registration numbers, 1,184,684; 1,736,428; and 2,102,804, have achieved incontestable status pursuant to 15 U.S.C. § 1065. Copies of

18

registration certificates and pending applications to register the Bulgari Trademarks are attached hereto as Exhibit I.

80.     Bulgari has extensively advertised and promoted the products manufactured, sold and offered for sale under the Bulgari Trademarks. The Bulgari Trademarks immediately indicate Bulgari as the exclusive source of products to which they are affixed, and signify goodwill of incalculable value.

## THE BULGARI COPYRIGHTED DESIGNS

81.     Bulgari also owns U.S. copyright registrations covering many of its unique and innovative jewelry and watch designs and collections.

82.     Among the U.S. copyright registrations owned by Bulgari for its unique and distinctive jewelry and watch designs are the following:

(a)     U.S. Copyright Registration No. VA-955-884, issued on November 17, 1999, for BVLGARI CONTEMPORARY ITALIAN JEWELLERS Holiday Catalog 1999;

(b)     U.S. Copyright Registration No. TX-5-263-543, issued on August 29, 2000, for the BVLGARI - Jewelry Collection 2000;

(c)     U.S. Copyright Registration No. VA-1-132-583, issued on June 7, 2002, for the BVLGARI Catalog - - Jewelry 2002/2003;

(d)     U.S. Copyright Registration No. VA-1-214-222, issued on January 24, 2003, for the BVLGARI Catalog CEREMONIES;

(e)     U.S. Copyright Registration No. VA-1-234-726, issued on September 5, 2003, for the BVLGARI Catalog ALLEGRA 2003;

(f)     U.S. Copyright Registration No. VA-1-287-644, issued on November 17, 2004, for the BVLGARI - Holiday Catalogue 2004;

19

(g)    U.S. Copyright Registration No. VA-1-351-532, issued on December 19, 2005, for the BVLGARI - Christmas Catalogue 2005; and

(h)    U.S. Copyright Registration No. VA-1-363-607, issued on May 1, 2006, for the BVLGARI Jewellery Stores 2006/2007.

83.    The foregoing copyrighted jewelry designs shall be hereinafter referred to collectively as the "Bulgari Copyrighted Designs". Copies of the registration certificates for the Bulgari Copyrighted Designs are attached hereto as Exhibit J.

84.    Bulgari owns all right, title and interest to the Bulgari Copyrighted Designs, which constitute original and copyrightable subject matter under the Copyright Act.

85.    Bulgari has duly complied with all relevant requirements of the Copyright Act with respect to the Bulgari Copyrighted Designs.

### THE BULGARI DESIGN PATENTS

86.    Bulgari also owns U.S. design patents covering many of its unique and innovative jewelry and watch designs.

87.    Among the U.S. design patents owned by Bulgari are the following:

(a)    Design Patent No. D338,629, issued on August 24, 1993, for a unique and innovative ornamental design for a finger ring;

(b)    Design Patent No. D434,688, issued on December 5, 2000, for a unique and innovative ornamental design for a ring; and

(c)    Design Patent No. D545,716, issued on July 3, 2007, for a unique and innovative ornamental design for an earring.

88.    The foregoing design patents shall be hereinafter referred to collectively as the "Bulgari Design Patents". Copies of the Bulgari Design Patents are attached hereto as Exhibit K.

20

89.    Bulgari is the owner of the entire right, title and interest in the Bulgari Design Patents.

90.    The Bulgari Design Patents are in full force and effect.

## OVERSTOCK'S ACTS OF
## INFRINGEMENT AND UNFAIR COMPETITION

91.    Upon information and belief, Overstock is in the business of manufacturing, offering for sale and selling jewelry and watch designs that it claims are "inspired by," "copies of," "replicas of" or "knockoffs of" the jewelry and watch designs of famous jewelry designers such as Cartier, Van Cleef, Gucci, Bulgari, David Yurman, Tiffany, Chanel, and Hermes. Overstock sells its jewelry and watch products on its Internet website <www.overstockjeweler.com>, on its Yahoo! Shopping Store site located at <http://store.yahoo.com/overstockjeweler>, and on its eBay Store site located at <http://stores.ebay.com/overstockjeweler> (the "Overstock Websites").

92.    Upon information and belief, Overstock is using, without authorization or license, the Cartier Trademarks, the Van Cleef Trademarks and the Alhambra Design, the Gucci Trademarks and the Horsebit Design, the Bulgari Trademarks, and other indicia, including well-known jewelry and watch marks and designations, in a manner that is likely to cause consumers searching the Internet for authentic Cartier, Van Cleef, Gucci or Bulgari products to visit the Overstock Websites and to be confused into believing that the products being offered for sale on such websites are authentic Cartier, Van Cleef, Gucci and Bulgari products, or that the Overstock Websites are authorized and/or approved by Cartier, Van Cleef, Gucci and Bulgari to sell such products.

93.    Upon information and belief, Overstock is also using the Cartier Trademarks, the Van Cleef Trademarks and the Alhambra Design, the Gucci Trademarks and the Horsebit

21

Design, the Bulgari Trademarks, and other indicia, including well-known jewelry and watch marks and designations, in such a manner as to cause consumers to believe that the Cartier, Van Cleef, Gucci and Bulgari imitations appearing on the Overstock Websites are equal, or nearly so, in quality, design and value, to original Cartier, Van Cleef, Gucci and Bulgari products, thereby enabling Overstock to charge consumers retail prices far in excess of the actual retail value of the jewelry and watch products offered for sale on the Overstock Websites.

94.     Upon information and belief, Overstock, by its pervasive use of the Cartier Trademarks, the Van Cleef Trademarks and the Alhambra Design, the Gucci Trademarks and the Horsebit Design, the Bulgari Trademarks, and other indicia, including well-known jewelry and watch marks and designations, in connection with the sale of and offering for sale of cheap imitations of authentic Cartier, Van Cleef, Gucci and Bulgari products, is causing irreparable harm to the goodwill symbolized by the famous Cartier, Van Cleef, Gucci and Bulgari brand names by, among other things, causing consumers to lose interest in the Cartier, Van Cleef, Gucci and Bulgari brands.

95.     Upon information and belief, Overstock has manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, and/or is causing to be manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, without authorization or license, jewelry and watch items that contain or incorporate copies and/or imitations of the Alhambra Design.

96.     Upon information and belief, Overstock has manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, and/or is causing to be manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, without authorization or

license, jewelry and watch items that contain or incorporate copies and/or imitations of the Horsebit Design.

97.    Upon information and belief, Overstock has manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, and/or is causing to be manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, without authorization or license, jewelry and watch items that are studied imitations of certain of the Cartier Copyrighted Designs, the Van Cleef Envol Copyrighted Design, the Gucci Copyrighted Designs and the Bulgari Copyrighted Designs.

98.    Upon information and belief, Overstock has manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, and/or is causing to be manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, without authorization or license, jewelry and watch items that are studied imitations of the Van Cleef Trade Dress Designs.

99.    Upon information and belief, Overstock has manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, and/or is causing to be manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, without authorization or license, jewelry and watch items that are studied imitations of the Cartier Design Patents and the Bulgari Design Patents.

100.    Upon information and belief, Overstock has been engaging in the above-described conduct knowingly, intentionally and deliberately.

## CARTIER'S FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT

101.    The allegations set forth in paragraphs 1 through 33 and 91 through 100 hereof are adopted and incorporated by reference as if fully set forth herein.

102.    By its acts alleged herein, Overstock has infringed, and continues to infringe, the CARTIER House Mark, in violation of 15 U.S.C. § 1114.

103.    Overstock, by its pervasive use of the CARTIER House Mark, has caused and is likely to continue to cause confusion, mistake and deception among the general consuming public and trade as to whether the Overstock Websites, or the products appearing thereon, originate from, or are affiliated with, sponsored by, or endorsed by Cartier. A copy of pages printed off the <www.overstockjeweler.com> website depicting Overstock's use of the CARTIER House Mark is attached hereto as Exhibit L.

104.    Overstock's unlawful actions have been entirely without Cartier's consent and have caused and are likely to continue to cause irreparable damage to Cartier.

105.    Upon information and belief, Overstock has been and/or is using the Cartier Trademarks with full knowledge of and/or willful disregard for Cartier's exclusive rights in the CARTIER House Mark.

106.    Overstock's conduct is intentionally willful, wanton, fraudulent, and malicious, and is undertaken with an intent to reap the benefit of Cartier's goodwill signified by the CARTIER House Mark.

107.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

**CARTIER'S SECOND CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT**

108.    The allegations set forth in paragraphs 1 through 33 and 91 through 107 hereof are adopted and incorporated by reference as if fully set forth herein.

109.    By its acts alleged herein, Overstock has infringed, and continues to infringe, the Cartier Product Marks, in violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

24

110.     Overstock's infringing activities have caused and are likely to continue to cause confusion, mistake and deception among the general consuming public and trade as to whether the Overstock Websites, or the products appearing thereon, originate from, or are affiliated with, sponsored by, or endorsed by Cartier. A chart identifying the Cartier Product Marks and the corresponding Overstock items and item descriptions that infringe the Cartier Product Marks is attached hereto as Exhibit M.

111.     Overstock's unlawful actions have been entirely without Cartier's consent and have caused and are likely to continue to cause irreparable damage to Cartier.

112.     Upon information and belief, Overstock has been and/or is using the Cartier Product Marks with full knowledge of and/or willful disregard for Cartier's exclusive rights in the Cartier Product Marks.

113.     Overstock's conduct is intentionally willful, wanton, fraudulent, and malicious, and is undertaken with an intent to reap the benefit of Cartier's goodwill signified by the Cartier Product Marks.

114.     Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

## CARTIER'S THIRD CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN

115.     The allegations set forth in paragraphs 1 through 33 and 91 through 114 hereof are adopted and incorporated by reference as if fully set forth herein.

116.     Overstock's use of the Cartier Trademarks and other indicia as aforesaid is likely to cause consumers, the public, and the trade to visit the Overstock Websites, and to purchase products on those sites, believing that Cartier is the source of such sites and/or the products offered thereon, or that there is some association between Cartier and the Overstock Websites

and/or the products offered thereon, or that Cartier has sponsored or authorized Overstock's aforementioned activities.

117.    As a result of the foregoing, Overstock has falsely designated the origin of the Cartier products offered on the Overstock Websites, all in violation of 15 U.S.C. §1125(a).

118.    Upon information and belief, Overstock intends to continue its willful acts, and to act in bad faith, unless restrained by this Court.

119.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

### CARTIER'S FOURTH CLAIM FOR RELIEF
### FALSE ADVERTISING

120.    The allegations set forth in paragraphs 1 through 33 and 91 through 119 hereof are adopted and incorporated by reference as if fully set forth herein.

121.    Overstock's overwhelming and pervasive use of the Cartier Trademarks and other indicia in its advertising and promotion of the jewelry and watch products being offered for sale on the Overstock Website deceives consumers into believing that Overstock's jewelry and watch products are comparable to Cartier's jewelry and watch products in quality, design and value, when they are not.

122.    The aforementioned acts of Overstock constitute the making of intentionally false or misleading representations of fact in interstate commerce, all in violation of 15 U.S.C. §1125(a).

123.    Upon information and belief, Overstock intends to continue its willful acts, and will continue to act in bad faith, unless restrained by this Court.

124.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

## CARTIER'S FIFTH CLAIM FOR RELIEF
## TRADEMARK DILUTION

125.    The allegations set forth in paragraphs 1 through 33 and 91 through 124 hereof are adopted and incorporated by reference as if fully set forth herein.

126.    The CARTIER House Mark is distinctive and famous. The CARTIER House Mark has been routinely used by Cartier in connection with the promotion and sale of its products, both nationally and internationally, and, as a result of the extensive and substantial promotion of the CARTIER House Mark, the consuming public and trade have come to associate this mark uniquely and distinctly with Cartier and its high quality luxury goods and services.

127.    Subsequent to the CARTIER House Mark having become famous, Overstock has copied and has made overwhelming and pervasive use of the CARTIER House Mark on the Overstock Websites. Overstock's use of the CARTIER House Mark is likely to cause brand conscious consumers to lose interest in the CARTIER House Mark as they encounter the use of the CARTIER House Mark on the Overstock Website in connection with the sale of cheap imitations of authentic Cartier products using the terms "replica", "inspired", "copy" and/or "knock-off."

128.    Further, Overstock's extensive use of the CARTIER House Mark in its advertising and promotion of the jewelry and watch products being offered for sale on the Overstock Website deceives consumers into believing that Overstock's jewelry and watch products are comparable to Cartier's jewelry and watch products in quality, design and value, when they are not.

129.    The aforementioned acts of Overstock has caused and is likely to continue to cause dilution of the CARTIER House Mark in violation of 15 U.S.C. § 1125(c).

130.    Upon information and belief, Defendants willfully intended to cause dilution of the CARTIER House Mark as aforesaid.

131.    Upon information and belief, Overstock intends to continue its willful acts, and will continue to act in bad faith, unless restrained by this Court.

132.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

## CARTIER'S SIXTH CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

133.    The allegations set forth in paragraphs 1 through 33 and 91 through 132 hereof are adopted and incorporated by reference as if fully set forth herein.

134.    Cartier is the owner of the Cartier U.S. Copyrighted Design.

135.    Overstock, without authorization from Cartier, has distributed, advertised, promoted, sold and offered for sale jewelry products incorporating designs that were copied from and are substantially similar in overall appearance to the Cartier U.S. Copyrighted Design.  A chart depicting the Cartier U.S. Copyrighted Design along with photos of the Overstock jewelry designs which Cartier alleges infringe the Cartier U.S. Copyrighted Design is attached hereto as Exhibit N.

136.    Overstock thereby has willfully infringed and, upon information and belief, is continuing to willfully infringe the Cartier U.S. Copyrighted Design.

137.    Upon information and belief, by its acts, Overstock has made and will make substantial profits and gains to which it is not in law or in equity entitled.

138.    Upon information and belief, Overstock intends to continue its willfully infringing acts, and will continue to willfully infringe the Cartier U.S. Copyrighted Design and to act in bad faith, unless restrained by this Court.

139.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

## CARTIER'S SEVENTH CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

140.    The allegations set forth in paragraphs 1 through 33 and 91 through 139 hereof are adopted and incorporated by reference as if fully set forth herein.

141.    The Cartier French Copyrighted Designs are original and creative works of Cartier Creation Studio, S.A. As provided in the Berne Convention, Cartier Creation Studio, S.A. is the owner of the Cartier French Copyrighted Designs, which were obtained under French law and are recognized as copyrighted subject matter under U.S. Copyright Law.

142.    Products incorporating the Cartier French Copyrighted Designs were first offered for sale in France. Such designs are not "U.S. Works" within the meaning of 17 U.S.C. §§ 101 and 411(a) and no such copyright registration is required to maintain this action.

143.    Overstock, without authorization from Cartier Creation Studio, S.A., has distributed, advertised, promoted, sold and offered for sale jewelry products incorporating designs that were copied from and are substantially similar in overall appearance to the Cartier French Copyrighted Designs. A chart depicting the Cartier French Copyrighted Designs along with photos of the Overstock jewelry designs which Cartier Creation Studio, S.A. alleges infringe the Cartier French Copyrighted Designs is attached hereto as Exhibit O.

144.    Overstock thereby has willfully infringed and, upon information and belief, is continuing to willfully infringe the Cartier French Copyrighted Designs.

145.    Upon information and belief, by its acts, Overstock has made and will make substantial profits and gains to which it is not in law or in equity entitled.

29

146.    Upon information and belief, Overstock intends to continue its willfully infringing acts, and will continue to willfully infringe the Cartier French Copyrighted Designs and to act in bad faith, unless restrained by this Court.

147.    Overstock's acts have damaged and will continue to damage Cartier Creation Studio, S.A., and Cartier Creation Studio, S.A. has no adequate remedy at law.

## CARTIER'S EIGHTH CLAIM FOR RELIEF
## DESIGN PATENT INFRINGEMENT

148.    The allegations set forth in paragraphs 1 through 33 and 91 through 147 hereof are adopted and incorporated by reference as if fully set forth herein.

149.    Overstock, without authorization from Cartier, has distributed, advertised, promoted, sold and offered for sale jewelry and watches that are studied imitations of and are substantially similar in overall appearance to the Cartier Design Patents. A chart depicting photos of Overstock's jewelry and watch designs that Cartier alleges infringe Cartier's Design Patents is attached hereto as Exhibit P.

150.    Upon information and belief, Overstock has had actual or constructive knowledge of the Cartier Design Patents, and has willfully distributed, advertised, promoted, sold and offered for sale jewelry and watches embodying the designs protected by U.S. Design Patent Nos. D388,332, D424,967, D497,567, D538,194 and D543,130.

151.    Upon information and belief, by its acts, Overstock has made and will make substantial profits and gains to which it is not in law or in equity entitled.

152.    Upon information and belief, Overstock intends to continue its willfully infringing acts, and will continue to willfully infringe Cartier's rights and to act in bad faith, unless restrained by this Court.

30

153.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

## CARTIER'S NINTH CLAIM FOR RELIEF
## COMMON LAW TRADEMARK INFRINGEMENT

154.    The allegations set forth in paragraphs 1 through 33 and 91 through 153 hereof are adopted and incorporated by reference as if fully set forth herein.

155.    The conduct of Overstock as described herein constitutes common law trademark infringement under the common law of the State of New York.

156.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

## CARTIER'S TENTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION

157.    The allegations set forth in paragraphs 1 through 33 and 91 through 156 hereof are adopted and incorporated by reference as if fully set forth herein.

158.    The conduct of Overstock as described herein constitutes common law unfair competition with Cartier under the common law of the State of New York.

159.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

## CARTIER'S ELEVENTH CLAIM FOR RELIEF
## NEW YORK GENERAL BUSINESS LAW § 349

160.    The allegations set forth in paragraphs 1 through 33 and 91 through 159 hereof are adopted and incorporated by reference as if fully set forth herein.

161.    Through the deceptive acts described herein, Overstock has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to

consumers and harm to the public in the State of New York, in particular, the payment by consumers of retail prices for Overstock's goods far in excess of their actual retail value.

162.    Upon information and belief, Overstock's acts and practices have deceived or have a tendency to deceive a material segment of the public to which Overstock has directed its marketing activities, and Cartier has been injured thereby.

163.    Upon information and belief, Overstock has willfully engaged in deceptive acts or practices in the conduct of its business in violation of § 349 of the General Business Law of the State of New York.

164.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

**CARTIER'S TWELFTH CLAIM FOR RELIEF**
**NEW YORK GENERAL BUSINESS LAW § 360-l**

165.    The allegations set forth in paragraphs 1 through 33 and 91 through 164 hereof are adopted and incorporated by reference as if fully set forth herein.

166.    Overstock's activities as alleged above have created and continue to create a likelihood of injury to Cartier's public image and reputation for the provision and sale of high quality goods and services, and to dilute the distinctive quality of the CARTIER House Mark and all rights held thereunder, in violation of § 360-l of the General Business Law of the State of New York.

167.    Upon information and belief, Overstock has willfully engaged in deceptive acts or practices in the conduct of its business in violation of § 360-l of the General Business Law of the State of New York.

168.    Overstock's acts have damaged and will continue to damage Cartier, and Cartier has no adequate remedy at law.

32

## VAN CLEEF'S FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT

169.     The allegations set forth in paragraphs 1 through 12, 34 through 54, and 91 through 100 hereof are adopted and incorporated by reference as if fully set forth herein.

170.     By its acts alleged herein, Overstock has infringed, and continues to infringe, the Van Cleef Trademarks, in violation of 15 U.S.C. § 1114.

171.     Overstock, by its pervasive use of the Van Cleef Trademarks, has caused and is likely to continue to cause confusion, mistake and deception among the general consuming public and trade as to whether the Overstock Websites, or the products appearing thereon, originate from, or are affiliated with, sponsored by, or endorsed by Van Cleef. A copy of pages printed off the <www.overstockjeweler.com> website depicting Overstock's use of the Van Cleef Trademarks is attached hereto as Exhibit Q.

172.     Overstock's unlawful actions have been entirely without Van Cleef's consent and have caused and are likely to continue to cause irreparable damage to Van Cleef.

173.     Upon information and belief, Overstock has been and/or is using the Van Cleef Trademarks with full knowledge of and/or willful disregard for Van Cleef's exclusive rights in the Van Cleef Trademarks.

174.     Overstock's conduct is intentionally willful, wanton, fraudulent, and malicious, and is undertaken with an intent to reap the benefit of Van Cleef's goodwill signified by the Van Cleef Trademarks.

175.     Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

## VAN CLEEF'S SECOND CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN

176.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 175 hereof are adopted and incorporated by reference as if fully set forth herein.

177.    Overstock's use of the Van Cleef Trademarks and other indicia as aforesaid is likely to cause consumers, the public, and the trade to visit the Overstock Websites, and to purchase products on those sites, believing that Van Cleef is the source of such sites and/or the products offered thereon, or that there is some association between Van Cleef and the Overstock Websites and/or the products offered thereon, or that Van Cleef has sponsored or authorized Overstock's aforementioned activities.

178.    As a result of the foregoing, Overstock has falsely designated the origin of the Van Cleef products offered on the Overstock Websites, all in violation of 15 U.S.C. §1125(a).

179.    Upon information and belief, Overstock intends to continue its willful acts, and to act in bad faith, unless restrained by this Court.

180.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

## VAN CLEEF'S THIRD CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN

181.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 180 hereof are adopted and incorporated by reference as if fully set forth herein.

182.    The Alhambra Design is used in commerce, is non-functional, is inherently distinctive and has acquired secondary meaning as the indicator of Van Cleef as the exclusive source of products containing or incorporating such design.

34

183.    Overstock has distributed, advertised, promoted, sold and offered for sale, in commerce, jewelry and watch designs which contain or incorporate designs that are confusingly similar to the Alhambra Design.

184.    Overstock's aforesaid conduct is calculated to deceive, and is likely to deceive, consumers who recognize and associate the Alhambra Design with Van Cleef as the exclusive source of products containing or incorporating such design. Moreover, such conduct is likely to cause confusion, to cause mistake or to deceive consumers as to the source of Overstock's products which contain a confusingly similar copy or imitation of the Alhambra Design. A chart containing photos of each of Overstock's jewelry designs which Van Cleef alleges contains a confusingly similar copy or imitation of the Alhambra Design is attached hereto as Exhibit R.

185.    As a result of the foregoing, Overstock has falsely designated the origin of the products offered on the Overstock Websites that contain copies or imitations of the Alhambra Design, all in violation of 15 U.S.C. §1125(a).

186.    Upon information and belief, Overstock intends to continue its willful acts, and to act in bad faith, unless restrained by this Court.

187.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

## VAN CLEEF'S FOURTH CLAIM FOR RELIEF
## FALSE ADVERTISING

188.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 187 hereof are adopted and incorporated by reference as if fully set forth herein.

189.    Overstock's overwhelming and pervasive use of the Van Cleef Trademarks and other indicia in its advertising and promotion of the jewelry and watch products being offered for

35

sale on the Overstock Website deceives consumers into believing that Overstock's jewelry and watch products are comparable to Van Cleef's jewelry and watch products in quality, design and value, when they are not.

190.    The aforementioned acts of Overstock constitute the making of intentionally false or misleading representations of fact in interstate commerce, all in violation of 15 U.S.C. §1125(a).

191.    Upon information and belief, Overstock intends to continue its willful acts, and will continue to act in bad faith, unless restrained by this Court.

192.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

## VAN CLEEF'S FIFTH CLAIM FOR RELIEF
## TRADEMARK DILUTION

193.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 192 hereof are adopted and incorporated by reference as if fully set forth herein.

194.    The Van Cleef Trademarks are distinctive and famous. The Van Cleef Trademarks have been routinely used by Van Cleef in connection with the promotion and sale of its products, both nationally and internationally, and, as a result of the extensive and substantial promotion of the Van Cleef Trademarks, the consuming public and trade have come to associate these marks uniquely and distinctly with Van Cleef and its high quality luxury goods and services.

195.    Subsequent to the Van Cleef Trademarks having become famous, Overstock has copied and has made overwhelming and pervasive use of the Van Cleef Trademarks on the Overstock Websites. Overstock use of the Van Cleef Trademarks is likely to cause brand

36

conscious consumers to lose interest in the Van Cleef Trademarks as they encounter the use of the Van Cleef Trademarks on the Overstock Website in connection with the sale of cheap imitations of authentic Van Cleef products using the terms "replica", "inspired", "copy" and/or "knock-off."

196.    Further, Overstock's extensive use of the Van Cleef Trademarks in its advertising and promotion of the jewelry products being offered for sale on the Overstock Website deceives consumers into believing that Overstock's jewelry and watch products are comparable to Van Cleef's jewelry and watch products in quality, design and value, when they are not.

197.    The aforementioned acts of Overstock has caused and is likely to continue to cause dilution of the Van Cleef Trademarks in violation of 15 U.S.C. § 1125(c).

198.    Upon information and belief, Defendants willfully intended to cause dilution of the Van Cleef Trademarks as aforesaid.

199.    Upon information and belief, Overstock intends to continue its willful acts, and will continue to act in bad faith, unless restrained by this Court.

200.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

## VAN CLEEF'S SIXTH CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

201.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 200 hereof are adopted and incorporated by reference as if fully set forth herein.

202.    The Van Cleef Envol Copyrighted Design is an original and creative work of Van Cleef. As provided in the Berne Convention, Van Cleef is the owner of the Van Cleef Envol

37

Copyrighted Design, which was obtained under French law and is recognized as copyrighted
subject matter under U.S. Copyright Law.

203.    Products incorporating the Van Cleef Envol Copyrighted Design were first
offered for sale in France.  Such design is not "U.S. Works" within the meaning of 17 U.S.C. §§
101 and 411(a) and no such copyright registration is required to maintain this action.

204.    Overstock, without authorization from Van Cleef, has distributed, advertised,
promoted, sold and offered for sale jewelry products incorporating a design that was copied from
and are substantially similar in overall appearance to the Van Cleef Envol Copyrighted Design.
A chart depicting the Van Cleef Envol Copyrighted Design along with a photo of the Overstock
jewelry design which Van Cleef alleges infringes the Van Cleef Envol Copyrighted Design is
attached hereto as Exhibit S.

205.    Overstock thereby has willfully infringed and, upon information and belief, is
continuing to willfully infringe the Van Cleef Envol Copyrighted Design.

206.    Upon information and belief, by its acts, Overstock has made and will make
substantial profits and gains to which it is not in law or in equity entitled.

207.    Upon information and belief, Overstock intends to continue its willfully
infringing acts, and will continue to willfully infringe the Van Cleef Envol Copyrighted Design
and to act in bad faith, unless restrained by this Court.

208.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van
Cleef has no adequate remedy at law.

## VAN CLEEF'S SEVENTH CLAIM FOR RELIEF
## TRADE DRESS INFRINGEMENT

209.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 208 hereof are adopted and incorporated by reference as if fully set forth herein.

210.    Each of the Van Cleef Trade Dress Designs is used in commerce, is non-functional, is inherently distinctive and has acquired secondary meaning as the indicator of Van Cleef as the exclusive source thereof.

211.    Overstock has distributed, advertised, promoted, sold and offered for sale, in commerce, jewelry designs consisting of or comprising designs that are confusingly similar to the Van Cleef Trade Dress Designs. A chart containing photos of each of Overstock's jewelry designs which Van Cleef alleges infringes on the Van Cleef Trade Dress Designs is attached hereto as Exhibit T.

212.    Overstock's aforesaid conduct is calculated to deceive, and is likely to deceive, consumers who recognize and associate the Van Cleef Trade Dress Designs with Van Cleef as the exclusive source thereof. Moreover, such conduct is likely to cause confusion, to cause mistake or to deceive consumers as to the source of Overstock's products, or as to a possible affiliation, connection or association of Overstock with Van Cleef and/or of the products being sold by Overstock with Van Cleef.

213.    Upon information and belief, by its acts, Overstock has made and will make substantial profits and gains to which it is not in law or in equity entitled.

214.    Upon information and belief, Overstock intends to continue its willfully infringing acts, and will continue to willfully infringe Van Cleef's rights and to act in bad faith, unless restrained by this Court.

215.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

## VAN CLEEF'S EIGHTH CLAIM FOR RELIEF
## COMMON LAW TRADEMARK INFRINGEMENT

216.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 215 hereof are adopted and incorporated by reference as if fully set forth herein.

217.    The conduct of Overstock as described herein constitutes common law trademark infringement under the common law of the State of New York.

218.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

## VAN CLEEF'S NINTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION

219.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 218 hereof are adopted and incorporated by reference as if fully set forth herein.

220.    The conduct of Overstock as described herein constitutes common law unfair competition with Van Cleef under the common law of the State of New York.

221.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

## VAN CLEEF'S TENTH CLAIM FOR RELIEF
## NEW YORK GENERAL BUSINESS LAW § 349

222.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 221 hereof are adopted and incorporated by reference as if fully set forth herein.

223.    Through the deceptive acts described herein, Overstock has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers and harm to the public in the State of New York, in particular, the payment by consumers of retail prices for Overstock's goods far in excess of their actual retail value.

224.    Upon information and belief, Overstock's acts and practices have deceived or have a tendency to deceive a material segment of the public to which Overstock has directed its marketing activities, and Van Cleef has been injured thereby.

225.    Upon information and belief, Overstock has willfully engaged in deceptive acts or practices in the conduct of its business in violation of § 349 of the General Business Law of the State of New York.

226.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

### VAN CLEEF'S ELEVENTH CLAIM FOR RELIEF
### NEW YORK GENERAL BUSINESS LAW § 360-l

227.    The allegations set forth in paragraphs 1 through 12, 34 through 54, 91 through 100, and 169 through 226 hereof are adopted and incorporated by reference as if fully set forth herein.

228.    Overstock's activities as alleged above have created and continue to create a likelihood of injury to Van Cleef's public image and reputation for the provision and sale of high quality goods and services, and to dilute the distinctive quality of the Van Cleef Trademarks and all rights held thereunder, in violation of § 360-l of the General Business Law of the State of New York.

41

229.    Upon information and belief, Overstock has willfully engaged in deceptive acts or practices in the conduct of its business in violation of § 360-l of the General Business Law of the State of New York.

230.    Overstock's acts have damaged and will continue to damage Van Cleef, and Van Cleef has no adequate remedy at law.

## GUCCI'S FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT

231.    The allegations set forth in paragraphs 1 through 12, 55 through 70, and 91 through 100 hereof are adopted and incorporated by reference as if fully set forth herein.

232.    By its acts alleged herein, Overstock has infringed, and continues to infringe, the GUCCI trademark, in violation of 15 U.S.C. § 1114.

233.    Overstock, by its pervasive use of the GUCCI trademark, has caused and is likely to continue to cause confusion, mistake and deception among the general consuming public and trade as to whether the Overstock Websites, or the products appearing thereon, originate from, or are affiliated with, sponsored by, or endorsed by Gucci.  A copy of pages printed off the <www.overstockjeweler.com> website depicting Overstock's pervasive use of the GUCCI trademark is attached hereto as Exhibit U.

234.    Overstock's unlawful actions have been entirely without Gucci's consent and have caused and are likely to continue to cause severe damage to Gucci.

235.    Upon information and belief, Overstock has been and/or is using the GUCCI trademark with full knowledge of and/or willful disregard for Gucci's exclusive rights in the GUCCI trademark.

42

236.   Overstock's conduct is intentionally willful, wanton, fraudulent, and malicious, and is undertaken with an intent to reap the benefit of Gucci's goodwill signified by the GUCCI trademark.

237.   Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

## GUCCI'S SECOND CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT

238.   The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231 through 237 hereof are adopted and incorporated by reference as if fully set forth herein.

239.   By its acts alleged herein, Overstock has infringed, and continues to infringe, Gucci's stylized G trademark, in violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

240.   Overstock's infringing activities have caused and are likely to continue to cause confusion, mistake and deception among the general consuming public and trade as to whether the Overstock Websites, or the products appearing thereon, originate from, or are affiliated with, sponsored by, or endorsed by Gucci. A chart identifying Gucci's stylized G trademark and the respective Overstock item that infringes the Gucci stylized G trademark is attached hereto as Exhibit V.

241.   Overstock's unlawful actions have been entirely without Gucci's consent and have caused and are likely to continue to cause severe damage to Gucci.

242.   Upon information and belief, Overstock has been and/or is using Gucci's stylized G trademark with full knowledge of and/or willful disregard for Gucci's exclusive rights in the stylized G trademark.

243.    Overstock's conduct is intentionally willful, wanton, fraudulent, and malicious, and is undertaken with an intent to reap the benefit of Gucci's goodwill signified by Gucci's stylized G trademark.

244.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

## GUCCI'S THIRD CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN

245.    The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231through 244 hereof are adopted and incorporated by reference as if fully set forth herein.

246.    Overstock's use of the Gucci Trademarks and other indicia as aforesaid is likely to cause consumers, the public, and the trade to visit the Overstock Websites, and to purchase products on those sites, believing that Gucci is the source of such sites and/or the products offered thereon, or that there is some association between Gucci and the Overstock Websites and/or the products offered thereon, or that Gucci has sponsored or authorized Overstock's aforementioned activities.

247.    As a result of the foregoing, Overstock has falsely designated the origin of the Gucci products offered on the Overstock Websites, all in violation of 15 U.S.C. §1125(a).

248.    Upon information and belief, Overstock intends to continue its willful acts, and to act in bad faith, unless restrained by this Court.

249.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

## GUCCI'S FOURTH CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN

250.    The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231through 249 hereof are adopted and incorporated by reference as if fully set forth herein.

251.    The Horsebit Design is used in commerce, is non-functional, is inherently distinctive and has acquired secondary meaning as the indicator of Gucci as the exclusive source of products containing or incorporating such design.

252.    Overstock has distributed, advertised, promoted, sold and offered for sale, in commerce, jewelry designs which contain or incorporate designs that are confusingly similar to the Horsebit Design.

253.    Overstock's aforesaid conduct is calculated to deceive, and is likely to deceive, consumers who recognize and associate the Horsebit Design with Gucci as the exclusive source of products containing or incorporating such design. Moreover, such conduct is likely to cause confusion, to cause mistake or to deceive consumers as to the source of Overstock's products which contain a confusingly similar copy or imitation of the Horsebit Design. A chart containing photos of each of Overstock's jewelry designs which Gucci alleges contains a confusingly similar copy or imitation of the Horsebit Design is attached hereto as Exhibit W.

254.    As a result of the foregoing, Overstock has falsely designated the origin of the products offered on the Overstock Websites that contain copies or imitations of the Horsebit Design, all in violation of 15 U.S.C. §1125(a).

255.    Upon information and belief, Overstock intends to continue its willful acts, and to act in bad faith, unless restrained by this Court.

256.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

## GUCCI'S FIFTH CLAIM FOR RELIEF
## FALSE ADVERTISING

257.    The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231through 256 hereof are adopted and incorporated by reference as if fully set forth herein.

258.    Overstock's overwhelming and pervasive use of the Gucci Trademarks and other indicia in its advertising and promotion of the jewelry and watch products being offered for sale on the Overstock Website deceives consumers into believing that Overstock's jewelry and watch products are comparable to Gucci's jewelry and watch products in quality, design and value, when they are not.

259.    The aforementioned acts of Overstock constitute the making of intentionally false or misleading representations of fact in interstate commerce, all in violation of 15 U.S.C. §1125(a).

260.    Upon information and belief, Overstock intends to continue its willful acts, and will continue to act in bad faith, unless restrained by this Court.

261.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

## GUCCI'S SIXTH CLAIM FOR RELIEF
## TRADEMARK DILUTION

262.    The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231through 261 hereof are adopted and incorporated by reference as if fully set forth herein.

263.    The Gucci Trademarks are distinctive and famous. The Gucci Trademarks have been routinely used by Gucci in connection with the promotion and sale of its products, both nationally and internationally, and, as a result of the extensive and substantial promotion of the Gucci Trademarks, the consuming public and trade have come to associate this mark uniquely and distinctly with Gucci and its high quality luxury goods and services.

264.    Subsequent to the Gucci Trademarks having become famous, Overstock has copied and has made overwhelming and pervasive use of the Gucci Trademarks on the Overstock Websites. Overstock use of the Gucci Trademarks is likely to cause brand conscious consumers to lose interest in the Gucci Trademarks as they encounter the use of the Gucci Trademarks on the Overstock Website in connection with the sale of cheap imitations of authentic Gucci products using the terms "replica", "inspired", "copy" and/or "knock-off."

265.    Further, Overstock's extensive use of the Gucci Trademarks in its advertising and promotion of the jewelry and watch products being offered for sale on the Overstock Website deceives consumers into believing that Overstock's jewelry and watch products are comparable to Gucci's jewelry and watch products in quality, design and value, when they are not.

266.    The aforementioned acts of Overstock has caused and is likely to continue to cause dilution of the Gucci Trademarks in violation of 15 U.S.C. § 1125(c).

267.    Upon information and belief, Defendants willfully intended to cause dilution of the Gucci Trademarks as aforesaid.

268.    Upon information and belief, Overstock intends to continue its willful acts, and will continue to act in bad faith, unless restrained by this Court.

269.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

47

## GUCCI'S SEVENTH CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

270.    The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231through 269 hereof are adopted and incorporated by reference as if fully set forth herein.

271.    Gucci is the owner of U.S. copyright registrations for the original and distinctive designs contained in the Gucci Fall/Winter 2005 Jewelry Collection (U.S. Copyright Registration No. VA-1-375-802) and the Gucci Spring/Summer 2007 Jewelry Collection (U.S. Copyright Registration No. VA-1-395-947).

272.    Overstock, without authorization from Gucci, has distributed, advertised, promoted, sold and offered for sale jewelry products incorporating designs that were copied from and are substantially similar in overall appearance to certain of the Gucci Copyrighted Designs contained in the Gucci Fall/Winter 2005 Jewelry Collection and the Gucci Spring/Summer 2007 Jewelry Collection.

273.    A chart depicting certain of the Gucci items covered by the Gucci Copyrighted Designs along with photos of the Overstock jewelry designs which Gucci alleges infringe those particular items is attached hereto as Exhibit X.

274.    Overstock thereby has willfully infringed and, upon information and belief, is continuing to willfully infringe Gucci's copyright registration for certain of the original and distinctive Gucci designs contained in the Gucci Fall/Winter 2005 Jewelry Collection and the Gucci Spring/Summer 2007 Jewelry Collection.

275.    Upon information and belief, by its acts, Overstock has made and will make substantial profits and gains to which it is not in law or in equity entitled.

48

276.    Upon information and belief, Overstock intends to continue its willfully infringing acts, and will continue to willfully infringe Gucci's copyrights and to act in bad faith, unless restrained by this Court.

277.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

**GUCCI'S EIGHTH CLAIM FOR RELIEF**
**COMMON LAW TRADEMARK INFRINGEMENT**

278.    The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231 through 277 hereof are adopted and incorporated by reference as if fully set forth herein.

279.    The conduct of Overstock as described herein constitutes common law trademark infringement under the common law of the State of New York.

280.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

**GUCCI'S NINTH CLAIM FOR RELIEF**
**COMMON LAW UNFAIR COMPETITION**

281.    The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231 through 280 hereof are adopted and incorporated by reference as if fully set forth herein.

282.    The conduct of Overstock as described herein constitutes common law unfair competition with Gucci under the common law of the State of New York.

283.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

## GUCCI'S TENTH CLAIM FOR RELIEF
## NEW YORK GENERAL BUSINESS LAW § 349

284.    The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231through 283 hereof are adopted and incorporated by reference as if fully set forth herein.

285.    Through the deceptive acts described herein, Overstock has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers and harm to the public in the State of New York, in particular, the payment by consumers of retail prices for Overstock's goods far in excess of their actual retail value.

286.    Upon information and belief, Overstock's acts and practices have deceived or have a tendency to deceive a material segment of the public to which Overstock has directed its marketing activities, and Gucci has been injured thereby.

287.    Upon information and belief, Overstock has willfully engaged in deceptive acts or practices in the conduct of its business in violation of § 349 of the General Business Law of the State of New York.

288.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

## GUCCI'S ELEVENTH CLAIM FOR RELIEF
## NEW YORK GENERAL BUSINESS LAW § 360-l

289.    The allegations set forth in paragraphs 1 through 12, 55 through 70, 91 through 100, and 231through 288 hereof are adopted and incorporated by reference as if fully set forth herein.

290.    Overstock's activities as alleged above have created and continue to create a likelihood of injury to Gucci's public image and reputation for the provision and sale of high quality goods and services, and to dilute the distinctive quality of the Gucci Trademarks and all

rights held thereunder, in violation of § 360-l of the General Business Law of the State of New York.

291.    Upon information and belief, Overstock has willfully engaged in deceptive acts or practices in the conduct of its business in violation of § 360-l of the General Business Law of the State of New York.

292.    Overstock's acts have damaged and will continue to damage Gucci, and Gucci has no adequate remedy at law.

## BULGARI'S FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT

293.    The allegations set forth in paragraphs 1 through 12 and 71 through 100 hereof are adopted and incorporated by reference as if fully set forth herein.

294.    By its acts alleged herein, Overstock has infringed, and continues to infringe, the BVLGARI House Marks, in violation of 15 U.S.C. § 1114.

295.    Overstock, by its pervasive use of the BVLGARI House Marks, has caused and is likely to continue to cause confusion, mistake and deception among the general consuming public and trade as to whether the Overstock Websites, or the products appearing thereon, originate from, or are affiliated with, sponsored by, or endorsed by Bulgari. A copy of pages printed off the <www.overstockjeweler.com> website depicting Overstock's use of the BVLGARI House Marks is attached hereto as Exhibit Y.

296.    Overstock's unlawful actions have been entirely without Bulgari's consent and have caused and are likely to continue to cause irreparable damage to Bulgari.

297.    Upon information and belief, Overstock has been and/or is using the BVLGARI House Marks with full knowledge of and/or willful disregard for Bulgari's exclusive rights in the BVLGARI House Marks.

298.    Overstock's conduct is intentionally willful, wanton, fraudulent, and malicious, and is undertaken with an intent to reap the benefit of Bulgari's goodwill signified by the BVLGARI House Marks.

299.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

## BULGARI'S SECOND CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT

300.    The allegations set forth in paragraphs 1 through 12, 71 through 100, and 293 through 299 hereof are adopted and incorporated by reference as if fully set forth herein.

301.    By its acts alleged herein, Overstock has infringed, and continues to infringe, the Bulgari Product Marks, in violation of 15 U.S.C. § 1114.

302.    Overstock's infringing activities have caused and are likely to continue to cause confusion, mistake and deception among the general consuming public and trade as to whether the Overstock Websites, or the products appearing thereon, originate from, or are affiliated withy, sponsored by, or endorsed by Bulgari.  A chart identifying the Bulgari Product Marks and the corresponding Overstock items and item descriptions that infringe the Bulgari Product Marks is attached hereto as Exhibit Z.

303.    Overstock's unlawful actions have been entirely without Bulgari's consent and have caused and are likely to continue to cause irreparable damage to Bulgari.

304.    Upon information and belief, Overstock has been and/or is using the Bulgari Product Marks with full knowledge of and/or willful disregard for Bulgari's exclusive rights in the Bulgari Product Marks.

305.    Overstock's conduct is intentionally willful, wanton, fraudulent, and malicious, and is undertaken with an intent to reap the benefit of Bulgari's goodwill signified by the Bulgari Product Marks.

306.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

## BULGARI'S THIRD CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN

307.    The allegations set forth in paragraphs 1 through 12, 71 through 100, and 293 through 306 hereof are adopted and incorporated by reference as if fully set forth herein.

308.    Overstock's use of the Bulgari Trademarks and other indicia as aforesaid is likely to cause consumers, the public, and the trade to visit the Overstock Websites, and to purchase products on those sites, believing that Bulgari is the source of such sites and/or the products offered thereon, or that there is some association between Bulgari and the Overstock Websites and/or the products offered thereon, or that Bulgari has sponsored or authorized Overstock's aforementioned activities.

309.    As a result of the foregoing, Overstock has falsely designated the origin of the Bulgari products offered on the Overstock Websites, all in violation of 15 U.S.C. §1125(a).

310.    Upon information and belief, Overstock intends to continue its willful acts, and to act in bad faith, unless restrained by this Court.

311.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

## BULGARI'S FOURTH CLAIM FOR RELIEF
## FALSE ADVERTISING

312.    The allegations set forth in 1 through 12, 71 through 100, and 293 through 311 hereof are adopted and incorporated by reference as if fully set forth herein.

313. Overstock's overwhelming and pervasive use of the Bulgari Trademarks and other indicia in its advertising and promotion of the jewelry and watch products being offered for sale on the Overstock Website deceives consumers into believing that Overstock's jewelry and watch products are comparable to Bulgari's jewelry and watch products in quality, design and value, when they are not.

314. The aforementioned acts of Overstock constitute the making of intentionally false or misleading representations of fact in interstate commerce, all in violation of 15 U.S.C. §1125(a).

315. Upon information and belief, Overstock intends to continue its willful acts, and will continue to act in bad faith, unless restrained by this Court.

316. Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

## BULGARI'S FIFTH CLAIM FOR RELIEF
## TRADEMARK DILUTION

317. The allegations set forth in paragraphs 1 through 12, 71 through 100, and 293 through 316 hereof are adopted and incorporated by reference as if fully set forth herein.

318. The BVLGARI House Marks are distinctive and famous. The BVLGARI House Marks have been routinely used by Bulgari in connection with the promotion and sale of its products, both nationally and internationally, and, as a result of the extensive and substantial promotion of the BVLGARI House Marks, the consuming public and trade have come to associate these marks uniquely and distinctly with Bulgari and its high quality luxury goods and services.

319. Subsequent to the BVLGARI House Marks having become famous, Overstock has copied and has made overwhelming and pervasive use of the BVLGARI House Marks on the

Overstock Websites. Overstock's use of the BVLGARI House Marks is likely to cause brand conscious consumers to lose interest in the BVLGARI House Marks as they encounter the use of the BVLGARI House Marks on the Overstock Website in connection with the sale of cheap imitations of authentic Bulgari products using the terms "replica", "inspired", "copy" and/or "knock-off."

320.    Further, Overstock's extensive use of the BVLGARI House Marks in its advertising and promotion of the jewelry and watch products being offered for sale on the Overstock Website deceives consumers into believing that Overstock's jewelry and watch products are comparable to Bulgari's jewelry and watch products in quality, design and value, when they are not.

321.    The aforementioned acts of Overstock has caused and is likely to continue to cause dilution of the BVLGARI House Marks in violation of 15 U.S.C. § 1125(c).

322.    Upon information and belief, Defendants willfully intended to cause dilution of the BVLGARI House Marks as aforesaid.

323.    Upon information and belief, Overstock intends to continue its willful acts, and will continue to act in bad faith, unless restrained by this Court.

324.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

## BULGARI'S SIXTH CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

325.    The allegations set forth in paragraphs 1 through 12, 71 through 100, and 293 through 324 hereof are adopted and incorporated by reference as if fully set forth herein.

326.    Overstock, without authorization from Bulgari, has distributed, advertised, promoted, sold and offered for sale jewelry products incorporating designs that were copied from

55

and are substantially similar in overall appearance to certain of the Bulgari Copyrighted Designs contained in the foregoing catalogs.

327.    A chart depicting certain of the Bulgari items covered by the Bulgari Copyrighted Designs along with photos of the Overstock jewelry designs which Bulgari alleges infringe those particular items is attached hereto as Exhibit AA.

328.    Overstock thereby has willfully infringed and, upon information and belief, is continuing to willfully infringe Bulgari's copyright registration for certain of the original and distinctive Bulgari designs contained in the foregoing catalogs.

329.    Upon information and belief, by its acts, Overstock has made and will make substantial profits and gains to which it is not in law or in equity entitled.

330.    Upon information and belief, Overstock intends to continue its willfully infringing acts, and will continue to willfully infringe Bulgari's copyrights and to act in bad faith, unless restrained by this Court.

331.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

## BULGARI'S SEVENTH CLAIM FOR RELIEF
## DESIGN PATENT INFRINGEMENT

332.    The allegations set forth in paragraphs 1 through 12, 71 through 100, and 293 through 331 hereof are adopted and incorporated by reference as if fully set forth herein.

333.    Overstock, without authorization from Bulgari, has distributed, advertised, promoted, sold and offered for sale jewelry and watches that are studied imitations of and are substantially similar in overall appearance to U.S. Design Patent Nos. D338,629, D434,688 and D545,716. A chart depicting photos of Overstock's jewelry designs that Bulgari alleges infringe the Bulgari Design Patents is attached hereto as Exhibit BB.

334.    Upon information and belief, Overstock has had actual or constructive knowledge of the Bulgari Design Patents, and has willfully distributed, advertised, promoted, sold and offered for sale jewelry embodying the designs protected by U.S. Design Patent Nos. D338,629, D434,688 and D545,716.

335.    Upon information and belief, by its acts, Overstock has made and will make substantial profits and gains to which it is not in law or in equity entitled.

336.    Upon information and belief, Overstock intends to continue its willfully infringing acts, and will continue to willfully infringe Bulgari's rights and to act in bad faith, unless restrained by this Court.

337.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

**BULGARI'S EIGHTH CLAIM FOR RELIEF**
**COMMON LAW TRADEMARK INFRINGEMENT**

338.    The allegations set forth in paragraphs 1 through 12, 71 through 100, and 293 through 337 hereof are adopted and incorporated by reference as if fully set forth herein.

339.    The conduct of Overstock as described herein constitutes common law trademark infringement under the common law of the State of New York.

340.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

**BULGARI'S NINTH CLAIM FOR RELIEF**
**COMMON LAW UNFAIR COMPETITION**

341.    The allegations set forth in paragraphs 1 through 12, 71 through 100, and 293 through 340 hereof are adopted and incorporated by reference as if fully set forth herein.

342.    The conduct of Overstock as described herein constitutes common law unfair competition with Bulgari under the common law of the State of New York.

57

343.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

## BULGARI'S TENTH CLAIM FOR RELIEF
## NEW YORK GENERAL BUSINESS LAW § 349

344.    The allegations set forth in paragraphs 1 through 12, 71 through 100, and 293 through 343 hereof are adopted and incorporated by reference as if fully set forth herein.

345.    Through the deceptive acts described herein, Overstock has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers and harm to the public in the State of New York, in particular, the payment by consumers of retail prices for Overstock's goods far in excess of their actual retail value.

346.    Upon information and belief, Overstock's acts and practices have deceived or have a tendency to deceive a material segment of the public to which Overstock has directed its marketing activities, and Bulgari has been injured thereby.

347.    Upon information and belief, Overstock has willfully engaged in deceptive acts or practices in the conduct of its business in violation of § 349 of the General Business Law of the State of New York.

348.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari has no adequate remedy at law.

## BULGARI'S ELEVENTH CLAIM FOR RELIEF
## NEW YORK GENERAL BUSINESS LAW § 360-l

349.    The allegations set forth in paragraphs 1 through 12, 71 through 100, and 293 through 348 hereof are adopted and incorporated by reference as if fully set forth herein.

350.    Overstock's activities as alleged above have created and continue to create a likelihood of injury to Bulgari's public image and reputation for the provision and sale of high quality goods and services, and to dilute the distinctive quality of the BVLGARI House Marks

58

and all rights held thereunder, in violation of § 360-l of the General Business Law of the State of

New York.

351.    Upon information and belief, Overstock has willfully engaged in deceptive acts or

practices in the conduct of its business in violation of § 360-l of the General Business Law of the

State of New York.

352.    Overstock's acts have damaged and will continue to damage Bulgari, and Bulgari

has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Overstock as follows:

1.    That Overstock and all of those acting in concert with it, including its agents and

servants, be permanently enjoined from manufacturing, vending, importing, distributing, selling,

promoting or advertising any item being a copy, reproduction, and/or colorable imitation of the

Cartier Trademarks, the Van Cleef Trademarks and the Alhambra Design, the Gucci Trademarks

and the Horsebit Design, the Bulgari Trademarks and/or the Van Cleef Trade Dress Designs, or

any product whose design infringes the Cartier Design Patents, the Bulgari Design Patents or is

substantially similar to the designs protected by the Cartier Copyrighted Designs, the Van Cleef

Envol Copyrighted Design, the Gucci Copyrighted Designs, or the Bulgari Copyrighted Designs,

including any other designs or products of Overstock.

2.    That Overstock and all of those acting in concert with it, including its agents and

servants, be permanently enjoined from (1) using in any way any of the Cartier Trademarks, the

Van Cleef Trademarks and the Alhambra Design, the Gucci Trademarks and the Horsebit

Design, or the Bulgari Trademarks; (2) infringing the Cartier Copyrighted Designs, the Van

Cleef Envol Copyrighted Design, the Gucci Copyrighted Designs, or the Bulgari Copyrighted

Designs; (3) infringing any of the Van Cleef Trade Dress Designs; (4) infringing the Cartier

Design Patents or the Bulgari Design Patents or any other Cartier or Bulgari designs that are the subject of a design patent; (5) from unfairly competing with Cartier, Van Cleef, Gucci or Bulgari in any manner; (6) from engaging in false advertising; and (7) from engaging in deceptive conduct causing harm to the public.

3.    That Overstock be required to recall all infringing items and advertising and promotional materials, and thereafter to deliver up for destruction all infringing designs, artwork, packaging, advertising and promotional materials, and any means of making such infringing items.

4.    That Overstock be directed to file with the Court and serve upon Cartier, Van Cleef, Gucci and Bulgari, respectively, within thirty (30) days after service of the judgment upon Overstock, a written report under oath setting forth in detail the manner in which Overstock has complied with the requirements set forth above in paragraphs 1 through 3.

5.    That Overstock be directed to account to Cartier, Van Cleef, Gucci and Bulgari, respectively, for all gains, profits and advantages derived from Overstock's wrongful acts.

6.    That Overstock pay to Cartier, Van Cleef, Gucci and Bulgari, respectively, any damages sustained by Cartier, Van Cleef, Gucci and Bulgari, respectively, by reason of the Overstock's purposefully wrongful acts, together with interest thereon.

7.    That Cartier, Van Cleef, Gucci and Bulgari, respectively, be awarded statutory damages and reasonable attorneys' fees under 17 U.S.C. §§ 504 and 505.

8.    That Cartier, Van Cleef, Gucci and Bulgari, respectively, be awarded its costs and attorneys' fees and investigatory fees and expenses to the full extent provided for by 15 U.S.C. § 1117.

9.      That Overstock pay as damage for its conduct alleged herein a sum equal to three times the amount of the actual damages suffered by Cartier, Van Cleef, Gucci and Bulgari, respectively.

10.     That Overstock pay to Cartier, Van Cleef, Gucci and Bulgari, respectively, the costs and disbursements of this action.

11.     That Cartier, Van Cleef, Gucci and Bulgari, respectively, be awarded pre-judgment interest on its judgment.

12.     That Cartier, Van Cleef, Gucci and Bulgari, respectively, be awarded such additional and further relief as the Court deems just and proper.

Dated: New York, New York
       September 6, 2007

                                            ARNOLD AND PORTER LLP


                                  By:    _____
                                         Louis S. Ederer (LE 7574)
                                         John Maltbie (JM 3658)
                                         Matthew T. Salzmann (MS 8403)
                                         399 Park Avenue
                                         New York, New York 10022
                                         (212) 715-1000

                                         *Attorneys for Plaintiffs*

61