**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------- x

YURMAN STUDIO, INC. and YURMAN
DESIGN, INC.,

               Plaintiffs/Counter-Defendants,

     - against -

ELENA CASTANEDA and EJEWELER LLC
d/b/a OVERSTOCKJEWELER.COM,

          Defendants/Counter-Plaintiffs.

------------------------------------------------- x
------------------------------------------------- x

CARTIER, a division of RICHEMONT NORTH
AMERICA, INC., CARTIER INTERNATIONAL,
N.V., CARTIER CREATION STUDIO, S.A., VAN
CLEEF & ARPELS S.A., VAN CLEEF &
ARPELS, INC., VAN CLEEF & ARPELS
DISTRIBUTION, INC., GUCCI AMERICA, INC.,
and BULGARI S.p.A.,

        Plaintiffs,

     - against -

ELENA CASTANEDA and EJEWELER LLC
d/b/a OVERSTOCKJEWELER.COM,

        Defendants.

------------------------------------------------- x

Civil Action No. 07-1241 (SAS)(HP)
(Action No. 1)

Civil Action No. 07-7862 (SAS)(HP)
(Action No. 2)

**MEMORANDUM OF LAW IN SUPPORT OF YURMAN STUDIO, INC., YURMAN DESIGN,
INC., CARTIER, A DIVISION OF RICHEMONT NORTH AMERICA, INC., CARTIER
INTERNATIONAL, N.V., CARTIER CREATION STUDIO, S.A., GUCCI AMERICA, INC.,
AND BULGARI S.P.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 4

I.    CARTIER AND GUCCI ARE ENTITLED TO SUMMARY
      JUDGMENT ON THEIR CLAIMS FOR TRADEMARK COUNTERFEITING .......... 5

      A.   The Cartier and Gucci Trademarks Are Valid and Protectable ........................... 7

      B.   Defendants Are Advertising and Selling Jewelry and Watch
           Products Bearing Counterfeit Cartier and Gucci Design
           Marks In Violation of the Lanham Act ................................................................ 7

      C.   Cartier and Gucci Are Entitled To An Enhanced Statutory Damages
           Award Because of Defendants' Willful Trademark Counterfeiting .................... 9

      D.   Cartier and Gucci Are Entitled To An Award of Costs,
           Including Reasonable Attorneys' Fees Because of
           Defendants' Willful Trademark Counterfeiting .................................................. 10

II.   YURMAN, CARTIER AND GUCCI ARE ENTITLED TO
      SUMMARY JUDGMENT ON THEIR CLAIMS FOR
      WILLFUL COPYRIGHT INFRINGEMENT ................................................. 11

      A.   The Yurman, Cartier and Gucci Copyrights Are Valid ...................................... 14

      B.   Defendants' Have Copied Yurman, Cartier and Gucci's
           Respective Copyrighted Works Without Authorization ...................................... 15

           1.   Yurman, Cartier and Gucci Have Established Defendants'
                Actual Copying of Their Respective Copyrights ..................................... 15

           2.   Defendants' Jewelry Products Are Substantially
                Similar to the Copyrighted Designs ......................................................... 16

      C.   Yurman, Cartier and Gucci Are Entitled To An Award of
           Maximum Statutory Damages .......................................................................... 17

      D.   Yurman, Cartier and Gucci Are Entitled To An Award of
           Full Costs, Including Reasonable Attorneys' Fees ............................................ 18

III.  YURMAN, CARTIER AND BULGARI ARE ENTITLED
      TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR
      DESIGN PATENT INFRINGEMENT .......................................................... 18

i

**A.** The Jewelry and Watch Products Being Sold By Defendants Incorporate Designs That Are Substantially the Same As Yurman, Cartier and Bulgari's Respective Patented Designs ............................ 20

**B.** The Jewelry and Watch Products Being Sold By Defendants Appropriate the Novelty In Yurman, Cartier and Bulgari's Respective Patents that Distinguish the Patents From the Prior Art.................. 21

**C.** Yurman, Cartier and Bulgari Are Entitled To An Award of Treble Damages ............................................................... 21

**D.** Yurman, Cartier and Bulgari Are Entitled An Award of Reasonable Attorneys' Fees................................................ 22

**IV.** YURMAN IS ENTITLED TO SUMMARY JUDGMENT DISMISSING DEFENDANTS' COUNTERCLAIM FOR CANCELLATION OF YURMAN'S COPYRIGHTS .................................... 22

CONCLUSION................................................................................................ 24

## TABLE OF AUTHORITIES

*Cases*                                                                      *Page*

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
    722 F.2d 988 (2d Cir. 1983)..................................................................... 16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .............................................................................. 4

*Cartier Int'l B.V. v. Ben-Menachem*,
    2008 WL 64005 (S.D.N.Y. Jan. 3, 2008)........................................... 6, 8

*Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp., Inc.*,
    486 F. Supp. 2d 286 (S.D.N.Y. 2007).................................................. 8

*Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*,
    246 F.3d 142 (2d Cir. 2001)............................................................... 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ...................................................................... 13, 15

*Fila U.S.A., Inc. v. Run Run Trading Corp.*,
    1996 WL 271992 (S.D.N.Y. May 21, 1996)........................................ 5

*Fischer-Price, Inc. v. Well-Made Toy Mfg. Corp.*,
    25 F.3d 119 (2d Cir. 1994)................................................................. 16

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ........................................................................... 18

*Fonar Corp. v. Domenick*,
    105 F.3d 99 (2d Cir. 1997)................................................................. 14

*Gorham Co. v. White*,
    81 U.S. (14 Wall.) 511 (1871)............................................................ 20

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
    991 F.2d 1072 (2d Cir. 1993)............................................................... 7

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    286 F. Supp. 2d 284 (S.D.N.Y. 2003).................................................. 8

*Gucci Am., Inc. v. Myreplicahandbag.com*,
    2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ...................................... 10

*Hamil Am., Inc. v. GFI*,
    193 F.3d 92 (2d Cir. 1999) ................................................................................. 16

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*,
    219 F.3d 104 (2d Cir. 2000) ................................................................................. 8

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005) ............................................................................... 14

*Johnson & Johnson Consumer Companies, Inc. v. Aini*,
    540 F. Supp. 2d 374 (E.D.N.Y. 2008) ........................................................... 9, 10

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*,
    997 F.2d 1444 (Fed. Cir. 1993) ......................................................................... 18

*Kieselstein-Cord v. Accessories by Pearl, Inc.*,
    632 F.2d 989 (2d Cir. 1980) ............................................................................... 11

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995), *aff'd* 104 F.3d 353 (2d Cir. 1996) .................... 14, 16

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) ..................................................................... 18, 20

*Lipton v. Nature Co.*,
    71 F.3d 464 (2d Cir. 1995) ................................................................................. 13

*Litton Sys., Inc. v. Whirlpool Corp.*,
    728 F.2d 1423 (Fed. Cir. 1988) ..................................................................... 20, 21

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
    799 F.2d 867 (2d Cir. 1986) ................................................................................. 7

*M. Lady, LLC v. AJI, Inc.*,
    2007 WL 2728711 (S.D.N.Y. Sept. 19, 2007) ................................................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................. 5

*Montres Rolex, S.A. v. Snyder*,
    718 F.2d 524 (2d Cir. 1983) ................................................................................. 8

*NFL v. PrimeTime 24 Joint Venture*,
    131 F. Supp. 2d 458 (S.D.N.Y. 2001) ............................................................... 17

*Nike, Inc. v. Top Brand Co. Ltd.*,
  2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006) ........................................... 9

*Odegard, Inc. v. Costikyan Classic Carpets, Inc.*,
  963 F. Supp. 1328 (S.D.N.Y. 1997) ......................................................... 15

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
  317 F.3d 209 (2d Cir. 2003) ...................................................................... 10

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*,
  274 F.2d 487 (2d Cir. 1960) ...................................................................... 16

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir.), *cert denied*, 368 U.S. 820 (1961) ..................... 8

*Polo Ralph Lauren, L.P. v. 3M Trading Co, Inc.*,
  1999 WL 33740332 (S.D.N.Y. Apr. 19, 1999) ........................................ 9

*Rockport Co., Inc. v. Deer Stags, Inc.*,
  65 F. Supp. 2d 189 (S.D.N.Y. 1999) ....................................................... 21

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992) ...................................................................... 14

*Rolex Watch U.S.A., Inc. v. Jones*,
  2002 WL 596354 (S.D.N.Y. April 17, 2002) ........................................... 10

*Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*,
  48 F.3d 1193 (Fed. Cir. 1995) ........................................................ 19, 20, 21

*Teleflex Inc. v. Am. Chain & Cable Co.*,
  273 F. Supp. 573 (S.D.N.Y. 1967) ........................................................... 22

*Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*,
  2008 WL 1805433 (S.D.N.Y. Apr. 21, 2008) .......................................... 15

*Virgin Enters. Ltd. v. Nawab*,
  335 F.3d 141 (2d Cir. 2003) ...................................................................... 6

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000) ................................................................... 4, 5

*Yurman Design, Inc. v. Golden Treasure Imp., Inc.*,
  275 F. Supp. 2d. 506 (S.D.N.Y. 2003) .................................................... 15

*Yurman Design, Inc. v. Paj, Inc.,*
    262 F.3d 101 (2d Cir. 2001) ................................................................ 11, 14

### Rules and Statutes

Fed. R. Civ. P. 56 .................................................................................... 4, 5

15 U.S.C. § 1057 ........................................................................................... 7

15 U.S.C. § 1114 ........................................................................................ 5, 6

15 U.S.C. § 1117 ....................................................................................... 9, 10

15 U.S.C. § 1127 ........................................................................................ 6, 7

17 U.S.C. § 102 ............................................................................................ 11

17 U.S.C. § 106 ....................................................................................... 11, 14

17 U.S.C. § 410 ............................................................................................ 14

17 U.S.C. § 501 ....................................................................................... 11, 13

17 U.S.C. § 504 ............................................................................................ 17

17 U.S.C. § 505 ....................................................................................... 18, 24

35 U.S.C. § 285 ............................................................................................ 22

35 U.S.C. § 289 ............................................................................................ 21

S. Rep. No. 104-177 (1995) .......................................................................... 9

Plaintiffs Yurman Studio, Inc., Yurman Design, Inc. (collectively "Yurman"), Cartier, a division of Richemont North America, Inc., Cartier International, N.V., Cartier Creation Studio, S.A. (collectively "Cartier"), Gucci America, Inc. ("Gucci") and Bulgari S.p.A. ("Bulgari") (collectively "Plaintiffs") respectfully move this Court for partial summary judgment against defendants Elena Castaneda ("Castaneda") and Ejeweler LLC d/b/a Overstockjeweler.com (collectively, "Defendants" or "Overstock"). On this motion Plaintiffs seek summary judgment with respect to all issues of liability and damages relating to their claims for willful counterfeiting of registered trademarks, and willful infringement of copyrighted designs and design patents. In addition, Yurman seeks summary judgment dismissing Defendants' counterclaim for cancellation of Yurman's copyrights based on fraud on the U.S. Copyright Office, and an award of full costs, including attorneys' fees, relating to the defense of such claim.

## PRELIMINARY STATEMENT

Plaintiffs are world famous designers of fine jewelry and watches. Their products contain highly distinctive and original designs that have become synonymous with each of them, and are internationally regarded as symbols of high fashion, luxury and prosperity. Yurman Decl. ¶¶ 3-5; Dube Decl. ¶¶ 5-9; Moss Decl. ¶¶ 3-5; Rapone Decl. ¶¶ 3-5. Plaintiffs Cartier and Gucci own U.S. trademark registrations for certain of their most famous designs. Dube Decl. ¶ 11; Moss Decl. ¶8. In addition, many of Plaintiffs' novel, unique and innovative jewelry and watch designs are protected by copyright and/or are the subject of U.S. design patents. All of these intellectual property rights are deliberately being infringed by Defendants on their insidious website. *See* Yurman Decl. ¶ 22; Dube Decl. ¶ 32; Moss Decl. ¶ 19; Rapone Decl. ¶ 17.

Defendants are common infringers and counterfeiters. They are in the business of selling deliberate knockoffs of famous jewelry designs through their website

1

<www.overstockjeweler.com>.  Indeed, while nearly all of the jewelry and watch products at issue which Defendants offer for sale are promoted as being "inspired by" Plaintiffs' renowned designs, the reality is that they are just cheap knockoffs.  In fact, Defendants themselves call their products what they really are — "copies", "imitations", "replicas", or "knockoffs".  *See* Yurman Decl. ¶ 20, Ex. N; Dube Decl. ¶¶ 28-29, Ex. J; Moss Decl. ¶ 17, Ex. C; Rapone Decl. ¶ 15, Ex. B; Ederer Decl. ¶ 2, Ex. A at 73:11; ¶ 4, Ex. C; ¶ 5, Ex. D.  Nearly every one of Defendants' product descriptions trumpets the fact that Defendants' products are knockoffs.  *See, e.g.,* Yurman Decl. Ex. D ("[t]his pendant is a *replica* of the famous David Yurman Albion design"); Dube Decl. Ex. C ("[t]his Cartier-esque Inspired Pasha Collection pendant . . . is *strikingly similar* to the thing"); Moss Decl. Ex. B ("this Gucci Jewelry Collection *replica* bracelet") (emphasis added).

Approximately four months ago when Plaintiffs deposed Defendant Castaneda, the owner of Overstock, approximately four months ago, Overstock's "About Us" web page touted the fact that "Overstock Jeweler has an unprecedented record and reputation for bringing *quality knockoff jewelry* to some of the country's most scrupulous bargain jewelry shoppers."  Ederer Decl. ¶ 4, Ex. C (emphasis added); *see also* Ederer Decl. ¶ 5, Ex. D ("*[w]e sell affordable reproductions or replicas* of popular designs found in the public domain") (emphasis added).  When confronted with this description of her own business, however, and Overstock's repeated use of words like "knockoff", "fake", "copy", "replica", "imitation", "-esque" and "faux" to describe its products, Castaneda disingenuously stated that Overstock does not sell "knockoff" or "replica" jewelry and watch products, claiming that this was a poor choice of words on her company's part, and that they have since "cleaned up a lot of wording to make [the website] look more professional."  Ederer Decl. Ex. ¶ 2, Ex. A at 73:10-16, 69:3-20.

Defendants also do absolutely nothing to determine whether their products infringe the intellectual property rights of the designers they are knocking off. Instead, Overstock attempts to hide behind a "Disclaimer" page which states, in part, "[b]ecause we respect the intellectual property rights of third parties, . . . Overstockjeweler will promptly and permanently remove any item from sale that infringes the intellectual property rights of a third party." Ederer Decl. ¶ 5, Ex. D. When asked at their depositions whether Overstock asks its suppliers if any of the products infringe the intellectual property rights of famous designers, both Castaneda and Overstock's buyer, Alice Limantara, testified that Overstock makes no such inquiry. Ederer Decl. ¶ 2, Ex. A at 174:2-17, 221:24 - 222:13; ¶ 3, Ex. B at 63:9-19. Indeed, Castaneda proudly testified that "I don't make [the jewelry and watch products], so I don't have to do that." Ederer Decl. ¶ 2, Ex. A at 174:2-17. Even after the filing of these actions made Defendants aware that hundreds of their products infringed lawfully protected designs, Defendants continued to sell all of the complained-of products and, indeed, now sell even more products that infringe Plaintiffs' protected designs. Yurman Decl. ¶ 11; Moss Decl. ¶ 10; Rapone Decl. ¶ 9.

Defendants' record keeping practices further demonstrate the deliberate nature of their acts of infringement. Defendants have refused repeated requests to produce records reflecting their sales of the infringing goods, claiming that they do not maintain their records in this manner. Indeed, at her deposition, Castaneda admitted that Overstock recycles the "Item Numbers" for its products, and that the same product may have different item numbers over time — making it impossible to determine the sales of any one item. Ederer Decl. ¶ 2, Ex. A at 762:7 - 763:12. Moreover, Defendants have failed to produce, claiming they do not maintain, records reflecting their cost of goods. Thus, when questioned about cost information prepared for this litigation, Limantara testified that the "cost" data was not accurate, and could not be

3

substantiated. Ederer Decl. ¶ 3, Ex. B at 102:10 - 106:8. This stonewalling, which is clearly

designed to frustrate Plaintiffs' efforts to determine Defendants' profits, is further proof of the

deliberate nature of Defendants' infringement. Accordingly, Plaintiffs seek awards of maximum

statutory damages on their trademark counterfeiting and copyright infringement claims, and

treble damages on their design patent infringement claims, as well as their costs and attorneys'

fees.

As there is no genuine issue of fact that Overstock is infringing and in many instances,

counterfeiting, Plaintiffs' internationally recognized, novel, unique, innovative and protected

jewelry and watch designs, Plaintiffs seek summary judgment on thirty-seven (37) of their claims

for willful trademark counterfeiting, and willful copyright and design patent infringement,

corresponding to seventy-nine (79) knockoff jewelry and watch products being sold by

Defendants.[1]

The relevant facts are set forth in detail in the accompanying Local Civil Rule 56.1

Statement and in the declarations of David Yurman, Bharat Dube, Esq., Jonathan Moss, Esq.,

Costanzo Rapone, Esq. and Louis S. Ederer, Esq., as well as the exhibits attached thereto.

## ARGUMENT

Summary judgment is appropriate where, as here, there are no genuine issues of material

fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Weinstock v. Columbia Univ.*, 224

---

[1] Plaintiffs Van Cleef & Arpels, Gucci and Yurman do not move for summary judgment on their claims for unregistered trademark and trade dress infringement because, as the Court pointed out during the pre-motion conference, claims of this nature generally are not decided on summary judgment. Plaintiffs also do not seek summary judgment on those copyright claims as to which Defendants have raised issues of law, namely, the French copyright claims of Cartier and Van Cleef & Arpels and Bulgari's U.S. copyright claims. Plaintiffs intend to demonstrate that these are all valid copyright claims in their opposition to Defendants' motion for summary judgment.

F.3d 33, 41 (2d Cir. 2000). Where there is no issue of fact, summary judgment may be entered on claims of liability as well as damages. *See Fila U.S.A., Inc. v. Run Run Trading Corp.*, 1996 WL 271992, at *3 (S.D.N.Y. May 21, 1996). When a moving party has established a *prima facie* case demonstrating the absence of any genuine issues of material fact, the non-moving party bears the burden of proffering "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). To overcome this burden, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

As set forth below and in the accompanying Local Civil Rule 56.1 Statement and declarations, Plaintiffs have satisfied their burden for an award of partial summary judgment on liability and damages as to their claims for trademark counterfeiting, and copyright and design patent infringement, as well as summary judgment dismissing Defendants' unsubstantiated counterclaim against Yurman.

## I.    CARTIER AND GUCCI ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR TRADEMARK COUNTERFEITING

Section 32 of the Lanham Act protects against, among other things, the unauthorized use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Defendants have engaged in the advertising, offering for sale and sale of goods bearing counterfeits of Cartier and Gucci's extremely well known registered design trademarks. These famous design marks, which identify the source of the jewelry and watch designs that Cartier and Gucci sell, are set forth in following chart:

5

| Trademark Reg. No. | Mark | Registered Owner | Infringing Overstock Items By Item No. |
|---|---|---|---|
| 1,372,423 | | Cartier International, N.V. | IND-BL505 |
| 2,322,769 | | Cartier International, N.V. | MK-GM273784292 |
| 2,436,100 | | Cartier International, N.V. | SF-91663201; PK-0819; PK-5778 |
| 3,162,410 | | Cartier International, N.V. | IND-BL505; BS-CSRG203; scrwtag-88228822; SF-273870925; PK-item774; G-STR0097V4-C01; PK-74398473; SM-74117551; PK-BCTRL3; PK-BCTRL2; PK-CR627; G-STRnewitem751; SLGX-2422; WH-4315; CA-3883; 925-D-1543; PK-CFCRT; JC-20K5035; PK-9842; SSTR-5341 |
| 3,282,847 | | Cartier International, N.V. | BRT-WCRTT2 |
| 3,282,846 | | Cartier International, N.V. | BRT-WCRTT2 |
| Serial No. 79037955 | | Cartier International, N.V. | IND-BL505; BS-CSRG203; SF-273870925; PK-item774; G-STR0097V4-C01; PK-74398473; SM-74117551; PK-BCTRL2; PK-CR627; G-STRnewitem751; SLGX-2422; 925-D-1543; SSTR-5341; PK-9842 |
| 2,234,272 | G | Gucci America, Inc. | sch-edf16 |

*See* Dube Decl. Exs. A-G; Moss Decl. Ex. J.

To prevail on their motion for summary judgment for trademark counterfeiting under 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1127, Cartier and Gucci must establish that no genuine issues of material fact exist as to (1) their respective ownership of valid marks entitled to protection under the Lanham Act, and (2) Defendants' use of confusingly similar marks in commerce. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003); *Cartier Int'l B.V. v. Ben-Menachem*, 2008 WL 64005 at *10 (S.D.N.Y. Jan. 3, 2008). However, as discussed below, where, as here, substantially indistinguishable (*i.e.,* counterfeit) marks are involved, it is

6

unnecessary to perform a traditional confusion analysis. As set forth below, Cartier and Gucci have met their burden, and summary judgment should be granted on their claims for trademark counterfeiting.

### A.    The Cartier and Gucci Trademarks Are Valid and Protectable

Pursuant to 15 U.S.C. § 1057(b), "[a] certificate of registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . . ." *See also, Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("registered trademarks are presumed to be distinctive and should be afforded the utmost protection"). Moreover, "[a] registered trademark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use." *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993).

Here, Cartier and Gucci, by way of their pleadings and accompanying declarations, have introduced evidence of their respective ownership of each of the trademarks at issue, and, consequently, their *prima facie* validity. Indeed, four of the trademarks — Reg. Nos.: 1,372,423 (Cartier); 2,322,769 (Cartier); 2,436,100 (Cartier); and 2,234,272 (Gucci) — have achieved incontestable status. *See* Dube Decl. Exs. A-G; Moss Decl. Ex. J.

### B.    Defendants Are Advertising and Selling Jewelry and Watch Products Bearing Counterfeit Cartier and Gucci Design Marks In Violation of the Lanham Act

The Lanham Act defines a "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The Second Circuit has stated that to determine whether a mark is counterfeit, the allegedly counterfeit mark should be compared with the registered mark "as it appears on actual merchandise to the average

7

purchaser." *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp., Inc.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007) (*citing Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 533 (2d Cir. 1983)).

There can be no dispute that Defendants are advertising and offering for sale products which constitute counterfeits of Plaintiffs' world famous design marks. All the Court needs to do is look at the identical designs being sold by Defendants on their website. While likelihood of confusion is typically determined by applying the multifactor test articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495-96 (2d Cir.), *cert denied,* 368 U.S. 820 (1961), this Court has repeatedly found that in cases involving counterfeit marks, such as this one, it is unnecessary to perform a *Polaroid* confusion analysis because "counterfeit marks are inherently confusing." *Cartier Int'l B.V.*, 2008 WL 64005 at *11 (citation omitted); *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion").

Here, Cartier and Gucci have identified numerous jewelry and watch products being offered for sale and sold by Overstock that incorporate designs substantially indistinguishable from their famous registered design marks. Moreover, Overstock's own product descriptions reflect Defendants' intention that their customers buy these products because they contain faithful replicas of Plaintiffs' famous registered designs.[2] For example, Overstock repeatedly

---

[2] Defendants will likely argue that despite the inherently confusing nature of counterfeit marks, their customers will not be confused as to the source of Plaintiffs' counterfeit products, because they tell their customers at the point-of-sale that the products are only "inspired by" Plaintiffs' designs. While Plaintiffs dispute this, in any event, the Second Circuit has made clear that actionable confusion under the Lanham Act is not limited to point-of-sale confusion. Rather, the Lanham Act also recognizes post-sale confusion. *Lois Sportswear*, 799 F.2d at 872. As explained in *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 108 (2d Cir. 2000), "post-sale confusion can occur when a manufacturer of knockoff goods offers consumers a cheap knockoff copy of the manufacturer's more expensive product, thus allowing the buyer to acquire the prestige of owning what appears to be the more expensive product." That is precisely the

Footnote continued on next page

refers to the fame of the Cartier screw-head design (Reg. No. 3,162,410) — "[t]his revolutionary ring is inspired by Cartier's *famous* Screwmotif Love design" and "featuring the *well-known* [sic] screw design"; indeed, no less than twenty-six (26) of Overstock's products incorporate this famous Cartier design. Dube Decl. ¶ 27, Ex. D (emphasis added). Upon reviewing the charts comparing the Cartier and Gucci registered design marks and the infringing Overstock products, a finding that the Overstock products are counterfeits is inevitable. For a comparison of the Cartier and Gucci registered design marks and Overstock's counterfeit designs, see Dube Decl. Exs. A-G; Moss Decl. Ex. J.

### C.  Cartier and Gucci Are Entitled To An Enhanced Statutory Damages Award Because of Defendants' Willful Trademark Counterfeiting

Cartier and Gucci are entitled to elect an award of statutory damages in lieu of actual damages, as the result of Defendants' counterfeiting of their marks.[3] Where, as here, the defendant is openly and willfully trading in counterfeits, the Lanham Act permits an award of enhanced statutory damages of up to $1 million per counterfeit mark per type of goods sold, offered for sale or distributed. 15 U.S.C. § 1117(c)(2); *see also Nike, Inc. v. Top Brand Co. Ltd.*, 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006) (awarding plaintiffs the maximum $12 million in statutory damages — $1 million for each infringed mark per type of good); *Johnson & Johnson*

---

Footnote continued from previous page
situation here. Defendants openly promote their counterfeit products as offering the cachet associated with Cartier and Gucci's famous jewelry and watch designs without the premium price tag, using phrases like "you will feel like the real thing" when their counterfeit products are worn. *See* Dube Decl. Ex. A ("[y]ou'll feel like the real thing in this Cartier replica bracelet").

[3] Defendants' repeated failure to produce complete and accurate sales and cost information have left Cartier and Gucci with no other choice but to seek statutory damages. As Congress acknowledged in adopting the statutory damages provision of the Lanham Act (15 U.S.C. § 1117(c)), "counterfeiters' records are frequently non-existent, inadequate or deceptively kept . . . , making proving actual damages in these cases difficult if not impossible." S. Rep. No. 104-177, at 10 (1995); *see also, Polo Ralph Lauren, L.P. v. 3M Trading Co, Inc.*, 1999 WL 33740332, at *4 (S.D.N.Y. Apr. 19, 1999) (statutory damages provision is "necessary and appropriate" because of the "deception routinely practiced by counterfeiters").

*Consumer Companies, Inc. v. Aini*, 540 F. Supp. 2d 374, 396 (E.D.N.Y. 2008) (finding that defendants' "reckless disregard for Plaintiff's rights" entitled plaintiffs to an award of not more than $1 million per counterfeit mark per type of goods sold). Such an award "should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Gucci Am., Inc. v. Myreplicahandbag.com*, 2008 WL 512789, at *3 (S.D.N.Y. Feb. 26, 2008) (*quoting Rolex Watch U.S.A., Inc. v. Jones*, 2002 WL 596354, at *5 (S.D.N.Y. April 17, 2002)).

In light of Defendants' open and deliberate counterfeiting of Plaintiffs' famous registered designs, not to mention Defendants' continued sale of counterfeit goods after Plaintiffs filed suit, there can be no dispute that Defendants' conduct is as willful as willful can be. Accordingly, Cartier and Gucci are entitled to an award of an award of $1 million per counterfeit mark per type of goods sold ($9 million — $1 million each for Reg. Nos. 1,372,423, 2,322,769, 2,436,100, 3,282,847, 3,282,846, 2,234,272 and Serial No. 79037955, and $2 million for Reg. No. 3,162,410, which design is used by Defendants in both jewelry and watches).

**D.    Cartier and Gucci Are Entitled To An Award of Costs, Including Reasonable Attorneys' Fees Because of Defendants' Willful Trademark Counterfeiting**

The Lanham Act further provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Second Circuit has interpreted the "exceptional cases" provision, to include cases involving "fraud or bad faith" or "willful infringement". *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003). In light of Defendants' willfulness in offering these products for sale in the first place, and their subsequent continued sale of counterfeit products after the commencement of this suit, this case qualifies as an "exceptional case", and the Court should award Cartier and Gucci their reasonable attorneys' fees in prosecuting their claims for trademark counterfeiting.

## II.    YURMAN, CARTIER AND GUCCI ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR WILLFUL COPYRIGHT INFRINGEMENT

"Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated . . . ." 17 U.S.C. § 102.  Copyright protection, therefore, extends to original works of jewelry design.  *Id.* (defining "works of authorship" to include "sculptural works"); *see, e.g., Kieselstein-Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989, 993 n.5 (2d Cir. 1980); *Yurman Design, Inc. v. Paj, Inc.*, 262 F.3d 101, 108-10 (2d Cir. 2001).  Pursuant to the Copyright Act, "the owner of a copyright . . . has the exclusive rights to do and to authorize . . . [the] distribut[ion of] copies . . . of the copyrighted work to the public by sale or other transfer of ownership." 17 U.S.C. § 106.  Moreover, "[a]nyone who violates any of the exclusive rights of the copyright owner [including the exclusive right to distribute copies of the copyrighted work] is an infringer of the copyright." 17 U.S.C. § 501.

Here, Defendants have engaged in the deliberate, unauthorized distribution and sale of jewelry knockoffs that infringe certain unique and innovative jewelry designs owned and registered in the U.S. Copyright Office by Yurman, Cartier and Gucci.  The copyrighted jewelry designs being infringed by Defendants are set forth in following chart:

| Copyright Reg. No. | Deposit Material | Registered Owner | Infringing Overstock Items By Item No. |
|---|---|---|---|
| VA 771-476 |  Bracelet B06195 | Yurman Studio, Inc. | Zan-B614-2 |
| VA 785-338 |  Earrings E06190 | Yurman Design, Inc. | AF2-CRE064SN |
| VA 1-024-276 |  Pave Collection Enhancer D06384 | Yurman Design, Inc. | BSB-PCZALB; DY2882; BSB-EPALB; G-SCR3157T; BSB-3702 |

11

| Copyright Reg. No. | Deposit Material | Registered Owner | Infringing Overstock Items By Item No. |
|---|---|---|---|
| VA 1-024-278 | Albion Collection Necklace N06261 | Yurman Design, Inc. | BSB-Palb; BSB-S1200T; PK-DYtopazE; DY-7014; BSB-Salbcable |
| VA 1-024-280 | Hampton Collection Enhancer D06377 | Yurman Design, Inc. | TF4121 |
| VA 1-024-281 | Hampton Collection Necklace | Yurman Design, Inc. | Zan-N375ZGS; Zan-N375GFS; Zan-B375GFS; Zan-B375ZGS; Zan-B375GL |
| VA 1-094-336 | Capri Collection | Yurman Studio, Inc. | AF2-0339 |
| VA 1-116-155 | "Albion" Collection | Yurman Studio, Inc. | PK-D_36; AF-PDY2C |
| VA 1-282-478 | Crossover Collection 2003 | Yurman Studio, Inc. | BSB-E73847769 |
| VA 1-282-481 | Madison Chain Collection 2003 | Yurman Studio, Inc. | PK-DYmadisonr |
| VA 1-384-012 | Linked Renaissance Collection 2005 | Yurman Studio, Inc. | BSB-P-SE-7010 |
| VA 1-390-915 | Pearl Collection I 2005 | Yurman Studio, Inc. | PK-74812751 |
| VA 1-130-790 | AGRAFE | Cartier International, N.V. | DT-LB-G0018; SG-3489-ASH; PK-4388897 |
| VA 1-375-802 | Fall Winter 2005 Jewelry Collection | Gucci America, Inc. | SC-HE56177; WH-5320 |
| | Fall Winter 2005 Jewelry Collection | Gucci America, Inc. | PK-3S-656-ASH; WH-SB0850 |

12

| Copyright Reg. No. | Deposit Material | Registered Owner | Infringing Overstock Items By Item No. |
|---|---|---|---|
| | Fall Winter 2005 Jewelry Collection | Gucci America, Inc. | PK-4777; PK-74390596 |
| | Fall Winter 2005 Jewelry Collection | Gucci America, Inc. | PK-K-75 |
| | Fall Winter 2005 Jewelry Collection | Gucci America, Inc. | 925-E-6303 |
| VA 1-395-947 | Spring Summer 2007 Jewelry Collection | Gucci America, Inc. | SS-73850683 |
| | Spring Summer 2007 Jewelry Collection | Gucci America, Inc. | PK-II-NET-ASH |
| | Spring Summer 2007 Jewelry Collection | Gucci America, Inc. | SSTR-NMRN150G |

Yurman Decl. ¶¶ 12-14, Exs. A-L; Dube Decl. ¶¶ 21-23, Ex. L; Moss Decl. ¶¶ 11-13, Exs. A-I.

To prevail on their motion for summary judgment, Yurman, Cartier and Gucci must establish that there are no genuine issues of material fact as to (1) their ownership of valid copyrights, and (2) Defendants' unauthorized copying of their copyrighted works. *See* 17 U.S.C. § 501; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). In this context, "copying" refers to the infringement of any of the copyright owner's exclusive rights under 17 U.S.C. § 106, including, without limitation, the right "to distribute copies . . . of the copyrighted work to the public by sale or other transfer

13

of ownership." 17 U.S.C. § 106(3). Therefore, although the Defendants deny that they manufactured the infringing jewelry items, Defendants may be found liable for infringement as the distributor of unauthorized copies. *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005). Accordingly, Yurman, Cartier and Gucci have satisfied their burden, and the Court should grant summary judgment in their favor on their respective claims for copyright infringement.

### A.    The Yurman, Cartier and Gucci Copyrights Are Valid

Yurman, Cartier and Gucci own valid copyrights in their respective jewelry designs. Pursuant to the Copyright Act, a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c); *see also Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992). Moreover, a copyright registration certificate raises a presumption that the party's work is copyrightable. *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997). Here, each of the Yurman, Cartier and Gucci designs at issue were registered within five years after the first publication of the copyrighted work and, therefore, the registrations constitute *prima facie* evidence of the validity of these copyrights. Yurman Decl. ¶ 8; Dube Decl. ¶ 14; Gucci Decl. ¶ 7.

Defendants may attempt to rebut the presumption of validity by asserting that Plaintiffs' jewelry designs are composed of common elements from the public domain; however, even if that were the case, it would be irrelevant. It is well-established, particularly in the case of jewelry designs, that "[c]opyright law may protect a combination of elements that are unoriginal in themselves." *Paj*, 262 F.3d at 109-10 (noting that the defendant's argument "misses the point", in that "the originality in Yurman's . . . designs inheres in the ways Yurman has recast and arranged [common] elements"); *accord Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003-04 (2d Cir. 1995), *aff'd* 104 F.3d 353 (2d Cir. 1996) ("a work may be copyrightable even though

14

it is entirely a compilation of unprotectable elements"); *Yurman Design, Inc. v. Golden Treasure Imp., Inc.*, 275 F. Supp. 2d. 506, 515 (S.D.N.Y. 2003) (a combination of common design elements is eligible for copyright protection, even where the common design elements by themselves are not).[4]

Here, each of the Yurman, Cartier and Gucci jewelry designs is copyrighted, and each consists of a unique and original combination of design elements. Yurman Decl. ¶ 12; Dube Decl. ¶ 21; Gucci Decl. ¶ 11. Accordingly, Yurman, Cartier and Gucci have established the absence of any genuine issue of material fact with respect to the validity of the copyright registrations at issue.

**B.     Defendants' Have Copied Yurman, Cartier and Gucci's Respective Copyrighted Works Without Authorization**

In order to establish copying, the second element of a copyright claim, "the plaintiffs must demonstrate both that the defendants have actually copied their works, and that such copying was illegal because a 'substantial similarity' exists between the defendants' [design] and the protectable elements of the plaintiffs' [design]." *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1334 (S.D.N.Y. 1997).

**1.     Yurman, Cartier and Gucci Have Established Defendants' Actual Copying of Their Respective Copyrights**

Defendants have, of course, admitted in their own product descriptions that they copied Plaintiffs' copyrighted designs. Moreover, actual copying is also established "by showing (1) 'that the defendant had access to the plaintiff's work' and (2) 'that the works are similar enough

---

[4] While the validity of copyright is dependent on its originality, "originality, as used in this context, 'means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.'" *Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*, 2008 WL 1805433, at *3 (S.D.N.Y. Apr. 21, 2008) (*quoting Feist*, 499 U.S. at 345). Indeed, "[t]he requisite level of creativity [needed to support a copyright] is extremely low; even a slight amount will suffice." *Feist*, 499 U.S. at 345.

Applying the ordinary observer test to the products being sold by Overstock, the products have obviously been copied from, and are substantially similar in overall appearance to, the Yurman, Cartier and Gucci copyrighted designs. A comparison of each of the Yurman, Cartier and Gucci copyrighted designs and the corresponding knockoff Overstock products definitively establishes that the Overstock products have been slavishly copied from, and attempt to capture the total concept and feel of the Yurman, Cartier and Gucci copyrighted designs. *See* Yurman Decl. Exs. A-L; Dube Decl. Ex. L; Gucci Decl. Exs. B-I. And if there were any doubt that it was Defendants' intention to capture the look and feel of Plaintiffs' designs, that would be dispelled by Defendants' own product descriptions, *e.g.,* "[t]he original piece retails for hundreds of dollars and now you can get the same designer's look for a fraction of the cost" (Yurman Decl. Ex. I); "[a]lthough not 100 percent Cartier you still get 100 percent of the look and feel" (Dube Decl. Ex. L); and "[t]rue designers [sic] look at a fraction of the price" (Moss Decl. Ex. C).

## C.    Yurman, Cartier and Gucci Are Entitled To An Award of Maximum Statutory Damages

The Copyright Act permits a copyright holder to elect, at any time prior to final judgment, an award of statutory damages in lieu of actual damages and profits. *See* 17 U.S.C. § 504(c)(1). Where, as here, a defendants infringement is willful, the Court may award statutory damages of up to $150,000 per copyrighted work. 17 U.S.C. § 504(c)(2); *see NFL v. PrimeTime 24 Joint Venture,* 131 F. Supp. 2d 458, 475 (S.D.N.Y. 2001) ("'willfulness' in the context of statutory damages for copyright infringement means that the infringer either had actual knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights").

The undisputed evidence makes clear that Defendants distributed and sold jewelry and watch products that deliberately infringe Yurman, Cartier and Gucci's respective copyrights, in

reckless and willful disregard of Plaintiffs' intellectual property rights. Moreover, Defendants continued to sell each and every one of the infringing products even after Plaintiffs commenced this suit, and even after Plaintiffs' provided "reasonable substantiation" of their copyrights. Thus, Yurman, Cartier and Gucci are entitled to a statutory award of $150,000 per copyrighted work that has been infringed (a total of $150,000 times 39 items, or $5,850,000).

### D.    Yurman, Cartier and Gucci Are Entitled To An Award of Full Costs, Including Reasonable Attorneys' Fees

Pursuant to 17 U.S.C. § 505, the Court may award "the recovery of full costs by or against any party . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994). Although such an award is discretionary, and in no way dependent upon a finding of bad faith or willfulness, where, as here, the infringing party intentionally infringes the plaintiff's copyright, an award of full costs, including attorneys' fees, is particularly appropriate. *See Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001).

Accordingly, in light of Defendants' willful and brazen infringement of the Yurman, Cartier and Gucci copyrights, the Court should exercise its discretion and award Yurman, Cartier and Gucci full costs, including reasonable attorneys' fees, in connection with their respective copyright infringement claims.

## III.    YURMAN, CARTIER AND BULGARI ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR DESIGN PATENT INFRINGEMENT

"A design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993). The "unauthorized manufacture or sale of 'the patented design, or any colorable imitation thereof'" constitutes design patent infringement. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993), *quoting* 35 U.S.C. § 289.

Here, Defendants are engaged in the unauthorized sale of colorable imitations of patented designs owned by Yurman, Cartier and Bulgari, respectively. The Yurman, Cartier and Bulgari designs patents being infringed by Defendants are depicted in the following chart:

| Patent No. | Claim | Drawing | Registered Owner | Infringing Overstock Items By Item No. |
|---|---|---|---|---|
| D371,314 | The ornamental design for a watch bracelet |  | Yurman Design, Inc. | MK-DY2t |
| D388,332 | The ornamental design for a combined watch bracelet |  | Cartier Creation Studio, S.A. | BRT-WCRTT2 |
| D424,967 | The ornamental design for a ring |  | Cartier Creation Studio, S.A. | PK-273786596; PK-RR3597; PK-Q-33-AY; pk-v2222 |
| D538,194 | The ornamental design for a ring |  | Cartier Creation Studio, S.A. | PK-RCrt |
| D543,130 | The ornamental design for a pendant |  | Cartier Creation Studio, S.A. | SF-91663201; PK-5778; PK-0819 |
| D338,629 | The ornamental design for a finger ring |  | Bulgari S.p.A. | AF-2148 |
| D434,688 | The ornamental design for a ring |  | Bulgari S.p.A. | R-Bzero1 |
| D545,716 | The ornamental design for an earring |  | Bulgari S.p.A. | BulgariE |

Yurman Decl. ¶¶ 9, 15-17, Ex. M; Dube Decl. ¶¶ 13, 18-20, Exs. H-K; Rapone Decl. ¶¶ 7, 10-12, Ex. A-C.

Yurman, Cartier and Bulgari may prevail on their claims for design patent infringement by establishing that there is no genuine issue of material fact that (1) the accused designs are "substantially the same" as their respective patent claims, and (2) the accused designs "appropriate the novelty" in their respective patents that distinguish the patents from the prior art. *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196-97 (Fed. Cir. 1995)

(*quoting Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)).  As established below,

Yurman, Cartier and Bulgari have satisfied this two-prong analysis.

**A.    The Jewelry and Watch Products Being Sold By Defendants Incorporate Designs That Are Substantially the Same As Yurman, Cartier and Bulgari's Respective Patented Designs**

The first prong of a design patent infringement analysis requires a finding that the

accused design is "substantially the same" as the patented design. *Sun Hill*, 48 F.3d at 1196.  "In

determining whether two designs are substantially the same, '[t]he criterion is deception of the

ordinary observer such that one design would be confused with the other.'"  *L.A. Gear*, 988 F.2d

at 1124.  As articulated in *Gorham*, this means "if, in the eye of an ordinary observer, giving

such attention as a purchaser usually gives, two designs are substantially the same, if the

resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to

be the other, the first one patented is infringed by the other." *Gorham*, 81 U.S. (14 Wall.) at 528.

Accordingly, a finding of infringement does not require a determination that the two designs are

identical; substantial similarity is all that is required. *Litton Sys., Inc. v. Whirlpool Corp.*, 728

F.2d 1423, 1444 (Fed. Cir. 1988) ("minor differences between the patented design and an

accused article's design cannot, and shall not, prevent a finding of infringement").  In conducting

this analysis, the Court must compare the allegedly infringing products with the design shown in

the patent, and not the commercial embodiment of the patent claim. *See Sun Hill*, 48 F.3d at

1196.

A comparison of Yurman, Cartier and Bulgari's patented designs and the corresponding

infringing jewelry and watch products being sold by Defendants removes any doubt that there is

a substantial similarity between Yurman, Cartier and Bulgari's patented designs and Defendants'

jewelry and watch products. *See* Yurman Decl. Ex. M; Dube Decl. Exs. H-K; Rapone Decl. Exs.

A-C.

20

**B.     The Jewelry and Watch Products Being Sold By Defendants Appropriate the Novelty In Yurman, Cartier and Bulgari's Respective Patents that Distinguish the Patents From the Prior Art**

The second prong of a design patent infringement analysis requires a determination that the accused design "appropriates the novelty" of the patented design which "distinguishes it from the prior art." *Sun Hill*, 48 F.3d at 1197. The Court, therefore, must find that the novel features of the patented design have been appropriated by the accused design. *Litton Sys.*, 728 F.2d at 1444. Importantly, "[a] unique combination of known design elements can satisfy the point of novelty requirement." *Rockport Co., Inc. v. Deer Stags, Inc.*, 65 F. Supp. 2d 189, 195 (S.D.N.Y. 1999).

There can be no dispute here, that Defendants have appropriated the novelty of the Yurman, Cartier and Bulgari designs. The novelty in each of Yurman, Cartier and Bulgari design patents is the totality of the non-functional and ornamental aspects of each work. As the jewelry and watch products being offered for sale and sold by Overstock are knockoffs of the patented designs, the novel features of such designs have been appropriated.

**C.     Yurman, Cartier and Bulgari Are Entitled To An Award of Treble Damages**

Pursuant to 35 U.S.C. § 289, Yurman, Cartier and Bulgari are entitled to an award of up to three times Defendants' profits on the sale of all infringing goods, where, as here, such infringement is willful. As stated above, however, Defendants have wholly failed to produce complete and accurate sales records or documents substantiating their costs — making it all but impossible for Yurman, Cartier and Bulgari to calculate Defendants' total profit on the sale of infringing goods. Accordingly, rather than an award of Defendants' profits, Plaintiffs seek an award of three times Defendants' total revenue in connection with the sales of the infringing products, to the extent that such revenue can be estimated.

21

**D.    Yurman, Cartier and Bulgari Are Entitled An Award of Reasonable Attorneys' Fees**

Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." As a determination of "bad faith on the part of the losing party" is sufficient to establish an exceptional case, the Court should award Yurman, Cartier and Bulgari reasonable attorneys' fees in connection with the prosecution of their design patent infringement claims. *Teleflex Inc. v. Am. Chain & Cable Co.*, 273 F. Supp. 573, 588 (S.D.N.Y. 1967).

**IV.    YURMAN IS ENTITLED TO SUMMARY JUDGMENT DISMISSING DEFENDANTS' COUNTERCLAIM FOR CANCELLATION OF YURMAN'S COPYRIGHTS**

Defendants have counterclaimed for cancellation of each of the twelve U.S. copyright registrations on which Yurman bases its copyright infringement claims. Defendants baldly, and utterly without basis, allege that when Mr. David Yurman, one of the most famous and innovative designers in modern jewelry history, created and designed each of the Yurman Copyrighted Designs, he copied each design from designs that existed in "substantially the same form" at some yet-to-be-identified time in the history of jewelry. Defendants further allege that Mr. Yurman then deliberately defrauded the U.S. Copyright Office by submitting copyright applications for the Yurman Copyrighted Designs and failing to inform the U.S. Copyright Office of the preexisting designs he copied from. Yurman Decl. ¶ 23.

Not surprisingly, however, when called upon to produce the jewelry designs that preexisted in "substantially the same form" from which Mr. Yurman allegedly copied the Yurman Copyrighted Designs, Defendants failed to produce a single preexisting design containing the unique and innovative combination of design elements that make up each of the Yurman Copyrighted Designs. In fact, in June 2007, when asked in a Rule 34 Request for

Production to produce all documents and communications supporting their allegation "that at the time Yurman designed and filed his copyright registrations for the Yurman [Copyrighted Designs], the jewelry designs that are the subject of those registrations were already in existence in substantially the same form", Defendants responded that "[n]o documents are currently in Defendants' custody or control." Yurman Decl. ¶¶ 24-25; Ederer Decl. ¶ 2, Ex. A at 332:21 - 334:15. Moreover, when Castaneda and her counsel were pressed on this issue at her deposition in March 2008, both admitted they still had no documents to substantiate Defendants' allegations — allegations that were made in a pleading signed by Defendants' counsel three months earlier. *Id.* Indeed, when asked directly at Castaneda's deposition for Defendants' proof that each of the Yurman Copyrighted Designs preexisted in "substantially the same form" in jewelry history, Defendants' counsel stated, "[w]hen and if Defendants come in possession, custody or control of those documents, she'll supply them. . . . [A]fter research is conducted, . . . meaning research into the background of jewelry and the history of jewelry in general, we will come up with evidence and we will supply that. We have not done that." Yurman Decl. ¶ 26; Ederer Decl. ¶ 2, Ex. A at 332:21 - 334:15.

Now, in a belated attempt to support their baseless counterclaim, Defendants have produced excerpts from various jewelry history books — none of which demonstrate anything about any preexisting designs "in substantially the same form". Thus, Defendants have never had, and still do not have, any evidence to support their allegations that Mr. Yurman committed a deliberate fraud on the U.S. Copyright Office. The reason for this is that these allegations are false, if not defamatory. Mr. Yurman did not copy anything from jewelry history when he created and designed the Yurman Copyrighted Designs. Yurman Decl. ¶ 27.

23

In order to prevail on their counterclaim, Defendants must be able to point to individual preexisting jewelry pieces that contain the same unique combination of design elements that make up each of the Yurman Copyrighted Designs. As Defendants have wholly failed to make out this showing, there are no genuine issues of material fact, and this Court should grant summary judgment dismissing Defendants' counterclaim. Yurman Decl. ¶¶ 27-29. Moreover, and in view of the fact that Defendants' counsel has admitted he had no evidence to support this counterclaim when he filed it on behalf of Defendants, the Court should award Yurman its costs, including reasonable attorneys' fees, associated with the defense of these claims. *See* 17 U.S.C. § 505.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for summary judgment in its entirety.

Dated: New York, New York
      June 13, 2008

                  ARNOLD & PORTER LLP

                  By: _____
                    Louis S. Ederer
                    John Maltbie
                    Matthew T. Salzmann
                    399 Park Avenue
                    New York, New York 10022
                    Telephone:  (212) 715-1000
                    Facsimile:  (212) 715-1399

                    *Attorneys for Plaintiffs*