UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
:
YURMAN STUDIO, INC. and YURMAN : Civil Action No. 07-1241 (SAS)(HP)
DESIGN, INC., : (Action No. 1)
:
       Plaintiffs/Counter-Defendants, :
:
- against - :
:
ELENA CASTANEDA and EJEWELER LLC :
d/b/a OVERSTOCKJEWELER.COM, :
:
       Defendants/Counter-Plaintiffs. :
:
------------------------------------------------------------- x
------------------------------------------------------------- x
:
CARTIER, a division of RICHEMONT NORTH : Civil Action No. 07-7862 (SAS)(HP)
AMERICA, INC., CARTIER INTERNATIONAL, : (Action No. 2)
N.V., CARTIER CREATION STUDIO, S.A., VAN :
CLEEF & ARPELS S.A., VAN CLEEF & :
ARPELS, INC., VAN CLEEF & ARPELS :
DISTRIBUTION, INC., GUCCI AMERICA, INC., :
and BULGARI S.p.A., :
:
       Plaintiffs, :
:
- against - :
:
ELENA CASTANEDA and EJEWELER LLC :
d/b/a OVERSTOCKJEWELER.COM, :
:
       Defendants. :
:
------------------------------------------------------------- x

**DECLARATION OF LOUIS S. EDERER, ESQ. IN SUPPORT
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# EXHIBIT A

1                    ELENA CASTANEDA
2       A      I own Ejeweler LLC and I also do --
3  I own an imaging consulting company.
4       Q      Ejeweler is a limited liability
5  corporation, correct?
6       A      Correct.
7       Q      And you formed that company?
8       A      I did.
9       Q      When did you form it?
10      A      You have the document there when I
11 formed it.  I'm not quite sure of the date.
12      Q      Are you the sole owner or member of
13 that company?
14      A      I am.
15      Q      Do you draw a salary from that
16 company?
17      A      Minimal salary, yes.
18      Q      So, you are an employee of that
19 company, correct?
20      A      Yes.
21      Q      And as far as the other business
22 that you mentioned, what was the name of that
23 business?
24      A      NewYorkimageconsultant.com.
25      Q      Is that a corporation?

ELENA CASTANEDA

1
2  Q    Who does your purchasing for you?
3  A    Alice.
4  Q    Are you aware that David Yurman sued
5  Richt At 29th?
6  A    Yes.
7  Q    Is Alice's last name Limantra?
8  A    Yes.
9       MR. EDERER:  Why don't we mark for
10 identification Plaintiffs' deposition 4, a
11 document titled "Defendant Castaneda's
12 Response to Plaintiffs First Set of
13 Interrogatories" in the Yurman litigation.
14      (The above described document was
15 marked Plaintiffs' Exhibit 4 for
16 identification, as of this date.)
17      MR. EDERER:  Let's mark for
18 identification as deposition Exhibit 5,
19 Plaintiffs' Exhibit 5, a document entitled
20 "Defendant Castaneda and Ejeweler Responses
21 to the Cartier First Set of
22 Interrogatories."
23      (The above described document was
24 marked Plaintiffs' Exhibit 5 for
25 identification, as of this date.)

1                    ELENA CASTANEDA
2        A      Yes, I was aware.
3        Q      Did you approve the wording that
4   includes the word "knockoff" as the header for
5   this particular item, at any time?
6        A      "Inspired knockoff," yes, I would
7   have approved that.
8        Q      And what did you intend to
9   communicate by the word "knockoff"?
10       A      Well, it's "inspired knockoff,"
11  similar to -- it's inspired.  So, it's not exact.
12       Q      I'm focusing on the word "knockoff".
13       A      It's with the word "inspired," so...
14       Q      But the word "knockoff" was removed
15  between February 15, 2007 and yesterday, correct?
16       A      Correct.
17       Q      Why was that?
18       A      I know back in the spring, we went
19  to our website and we cleaned up a lot of wording
20  to make it look more professional.
21       Q      So, are you saying the word
22  "knockoff" wasn't intended to mean anything in
23  particular?
24       A      They were just using different
25  terminology and we sort of made it now more

```
                    ELENA CASTANEDA
 1
 2   uniform.
 3        Q    And when you use the word
 4   "knockoff," what were you intending to communicate
 5   to the consumer?
 6        A    That this is inspired by whatever
 7   particular designer we have at the time.
 8        Q    That's what the current header says,
 9   "David Yurman Albion Inspired," correct?  I'm
10   focusing on the word "knockoff."
11        A    Correct, but it has the word
12   "inspired" in front of it.  It's an "inspired
13   knockoff."
14        Q    What is an "inspired knockoff"?
15        A    That it is an inspired design.
16        Q    Have you ever heard the word
17   "knockoff" before, outside of your business?
18        A    Correct.
19        Q    You have heard that term, correct?
20        A    I have.
21        Q    And what do you understand the word
22   "knockoff" to mean?
23        A    "Knockoff" is something that may be
24   similar to a more -- another design, a design --
25   something that's recognizable.
```

```
 1                    ELENA CASTANEDA
 2   uniform.
 3        Q    That's the only reason why you did
 4   that?
 5        A    Yes.
 6        Q    That's the only reason why you
 7   changed the wording, to make it more professional?
 8        A    We tried to make it look more
 9   professional, correct.
10        Q    Is your company a knockoff company?
11        A    We sell inspired designer jewelry.
12        Q    Do you do knockoffs?
13        A    No.
14        Q    Do you do replicas?
15        A    Inspired replicas, similar to
16   designers.
17        Q    This page, Page 2, doesn't say
18   inspired replica, it says "a replica of," correct?
19        A    Again, this is a year old.
20        Q    The day we filed suit against your
21   company.  Why don't you take a look at the eighth
22   page of the exhibit, the Albion ring.
23        A    Okay.
24        Q    This item is headed "David Yurman
25   Jewelry Inspired Sterling Silver Turquois Albion
```

ELENA CASTANEDA

1
2   Ring."
3           Do you see that?
4       A   I do.
5       Q   The printout is 2/15/07.
6       A   I do.
7       Q   Do you have any reason to believe
8   this is not how your website appeared on this
9   particular page, on that date?
10      A   No, it is.
11      Q   Looking down at the description of
12  this item, first sentence says, "This is a
13  beautiful imitation of the David Yurman Albion
14  Collection Design."
15          Do you see that?
16      A   Correct.
17      Q   What did you mean to communicate by
18  the word "imitation"?
19      A   That it's similar to the David
20  Yurman Albion collection.
21      Q   The word "imitation" means similar.
22          Is that what your testimony is?
23      A   Yes.
24      Q   Does the word "copy" mean similar?
25      A   It doesn't mean it's a David Yurman.

ELENA CASTANEDA

2  Q    Do you make any inquiry whatsoever
3  as to whether that's a protected design?
4  A    We put on our website, if you agree
5  to our disclaimer -- it makes it very clear, if
6  you think this is copyright infringement and you
7  send us the appropriate document, we will remove
8  those designs. We cannot search for thousands of
9  designs.
10 Q    So, the answer is, no, you don't do
11 anything before putting an item up on your website
12 to determine whether the item is protected in any
13 way; is that correct?
14 A    That wouldn't be possible.
15 Q    So, the answer is no?
16 A    No. I don't make them, so I don't
17 have to do that.
18 Q    Let's go back to the "About Us" page
19 that we were looking at, Exhibit 3.
20         MR. EDERER: You mentioned the
21     disclaimer page, so why don't we mark for
22     identification as deposition Exhibit 17
23     what I believe may be the disclaimer page
24     that you referred to in your testimony.
25         (The above described document was

```
 1                ELENA CASTANEDA
 2          What do you mean by that?
 3     A    I allowed my attorney to make a
 4  decision what is reasonable.  That is not my field
 5  of expertise.
 6     Q    It goes on to say "Overstock Jewelry
 7          will promptly and permanently remove any
 8          item from sale that infringes the
 9          intellectual property rights of
10          third parties."
11          Do you see that?
12     A    Yes.
13     Q    Did you ever do that in the history
14  of your company?
15     A    As I answered the question earlier,
16  I removed some items from Tiffany; and removed
17  some items from Yurman.
18     Q    I just have a couple more questions
19  about your disclaimer page, Exhibit 17.
20          Do you have that in front of you?
21     A    Yes, um-hum.
22     Q    I just want to be clear about
23  something.
24          I think you testified earlier that
25  you don't do any checking in advance to determine
```

ELENA CASTANEDA

1
2  whether or not a particular item that you may wish
3  to sell violates any intellectual property rights
4  of a designer inspired item that you wish to sell.
5          Is that correct?
6    A    That's correct.
7    Q    And I think you indicated, in part,
8  that's because you sell so many items, 4,000,
9  5,000 items, that it would be difficult or near
10 impossible to do that, correct?
11   A    I didn't see any need for it either.
12        I'm not a manufacturer of it, so I
13 just buy what people are selling me.
14   Q    So, in other words, if you didn't
15 manufacture it, you don't think you're really
16 exposed to a claim for infringement.  Is that what
17 you're saying?
18        MR. ZARIN:  Objection.
19   Q    Are you saying your manufacturer is
20 indemnifying you, so you can rely on them?
21        I don't understand what you're
22 saying.
23   A    I've been a buyer many years, and I
24 know, I buy things I believe are going to sell.
25   Q    Without regard to whether or not

```
                    ELENA CASTANEDA
 1
 2          MR. EDERER:  Yes.
 3     A    No, I didn't search my own records.
 4     Q    Why not?
 5     A    I assumed you had all this paperwork
 6  from the initial onset.
 7          MR. EDERER:  Mr. Zarin, come on, this
 8     is a litigation, okay.
 9          Let's mark for identification as
10     deposition Exhibit 32, Defendant Castaneda
11     "Responses to Plaintiffs' First Request for
12     Production of Documents."
13          (The above described document was
14     marked Plaintiffs' Exhibit 32 for
15     identification, as of this date.)
16     A    I'm confused, because this was all sent
17  to you in our response.
18     Q    Ms. Castaneda, there is no question
19  pending.
20     A    Okay.
21     Q    Could you take a look at Exhibit 32,
22  please.  Look at Page 30, please, document request
23  number 71, "All documents and communications
24     supporting the allegation contained in
25     Paragraph 20 of your counterclaim, that at the
```

```
 1                ELENA CASTANEDA
 2      time Yurman designed and filed his copyright
 3      registrations for the Yurman designs, the
 4      jewelry designs that are the subject of
 5      those registrations were already in existence
 6      in substantially the same form."
 7            Do you see that?
 8      A     Yes.
 9      Q     The response is "No documents are
10   currently in Defendants' custody or control."
11            Do you see that?
12      A     I do.
13      Q     Did you make a search of your records
14   to determine whether you had any such documents in
15   your possession, custody or control?
16      A     Regarding the David Yurman, no.
17      Q     Why not?
18      A     These are the same documents.  They
19   were with you.
20            MR. EDERER:  There will be a sanctions
21      motion about this one and some of the other
22      things I've heard.  The response is that we
23      have them, therefore you don't have to produce
24      them.  Is that the response?
25            MR. ZARIN:  That's the witness'
```

```
 1                    ELENA CASTANEDA
 2     response, not my response.
 3            MR. EDERER:  What's your response?
 4            MR. ZARIN:  There were no documents in
 5     our possession.
 6            When and if Defendants come in
 7     possession, custody or control of those
 8     documents, she'll supply them.  What I meant
 9     and still mean by that, after research is
10     conducted, and I don't know mean research in
11     her files, but outside of her files, outside
12     of her office, meaning research into the
13     background of jewelry, the history of jewelry
14     in general, we will come up with evidence and
15     we will supply that.  We have not done that.
16            MR. EDERER:  The research hasn't been
17     done yet but the allegation was made?
18            MR. ZARIN:  The allegation certainly
19     was made, yes.
20            MR. EDERER:  That's all I need to know.
21     That sounds like Rule 11.
22            MR. ZARIN:  Based upon the knowledge of
23     the jewelry design business, general knowledge
24     of the business.
25            MR. EDERER:  This is a very specific
```

```
 1                    ELENA CASTANEDA
 2         A       It was on a heading, so I don't
 3    know why it's not there.
 4         Q       Can you provide us with that
 5    information?
 6         A       Yes.
 7         Q       Let me ask you another
 8    question, and it relates to Exhibit 138 and
 9    how we determine what your sales have been for
10    particular items.
11                 Have item numbers changed over
12    the years with respect to the same item?
13         A       It's possible.  I would say
14    maybe less than, less than -- we really try
15    not to change item numbers.
16                 IDs don't change, so you could
17    do it by ID, too, ID numbers.  But it's better
18    to do it by item numbers, because it would be
19    difficult for you guys to understand ID.
20         Q       Well, when you refer to ID --
21         A       I'm sorry, that's not true.
22    No, right.  Item codes do not change.  We
23    never change those item codes.
24                 What will happen if an item is
25    no longer available, we will, or if it changes
```

```
                        ELENA CASTANEDA
 1
 2   in the shape somehow, or the design, we will
 3   substitute it with another picture.
 4            So, but if it's already set up
 5   as like, you know, Bulgari inspired so and so,
 6   it will be another Bulgari so and so, because
 7   that page is already indexed as that.
 8            So it may not exactly reflect
 9   the same exact picture or the same exact item,
10   but the item number will be the same.  So it's
11   still the same, but it's just the item may be,
12   have changed a little bit.
13        Q    When you say an item is indexed
14   a certain way, what are you referring to?
15        A    Well, it's indexed by the
16   search engines.
17        Q    By what search engines?
18        A    Google, Yahoo!
19        Q    Are you referring to a search
20   by item number?
21        A    No, I'm referring to when you
22   set up a web page, the older a page is, once
23   it's been published to the web, it gets
24   indexed by search engines, so you never want
25   to delete a page, so that's why we don't
```