UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

YURMAN STUDIO, INC. and YURMAN DESIGN, INC.,

    Plaintiffs/Counter-Defendants,

- against -

ELENA CASTANEDA and EJEWELER LLC d/b/a OVERSTOCKJEWELER.COM,

    Defendants/Counter-Plaintiffs.

Civil Action No. 07-1241 (SAS)(HP)
(Action No. 1)

---------------------------------------------------------------- x
---------------------------------------------------------------- x

CARTIER, a division of RICHEMONT NORTH AMERICA, INC., CARTIER INTERNATIONAL, N.V., CARTIER CREATION STUDIO, S.A., VAN CLEEF & ARPELS S.A., VAN CLEEF & ARPELS, INC., VAN CLEEF & ARPELS DISTRIBUTION, INC., GUCCI AMERICA, INC., and BULGARI S.p.A.,

    Plaintiffs,

- against -

ELENA CASTANEDA and EJEWELER LLC d/b/a OVERSTOCKJEWELER.COM,

    Defendants.

Civil Action No. 07-7862 (SAS)(HP)
(Action No. 2)

---------------------------------------------------------------- x

**DECLARATION OF BHARAT DUBE, ESQ. IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# EXHIBIT C

     



JOAILLIERS
PARIS   LONDRES   NEW YORK

## CONTRAT DE TRAVAIL A DUREE INDETERMINEE
### de

1. **La société CARTIER CREATION STUDIO SA**
   Société de droit suisse
   dont le siège social est situé :
   Genève
   Suisse
   Dont la succursale française est située 37 rue Boissy d'Anglas, 75008 Paris

   Représentée aux fins des présentes par Monsieur Bernard Fornas, agissant en qualité d'Administrateur.

   Ci-après désignée "CCS"

   **D'UNE PART**

ET

2. 

   Née le              à           ,
   de nationalité               ,

   numéro de sécurité sociale :

   Ci-après désignée «                    »

   **D'AUTRE PART**

   Ci-après ensemble désignées « les Parties »

---

**IL A ETE PREALABLEMENT RAPPELE CE QUI SUIT :**

CCS, société de droit suisse, appartient au groupe CARTIER, entreprise notoire du secteur de la joaillerie, de l'horlogerie et du luxe en général, qui fabrique et commercialise des produits de luxe sous la marque « CARTIER ».

CCS a pour objet de coordonner la conception, la création et la mise au point des produits commercialisés sous la marque « CARTIER ».

Dans ce cadre, CCS assure depuis la Suisse et à l'échelle européenne la coordination interne et externe, par des salariés et prestataires indépendants de toutes nationalités, d'actes préparatoires à la mise sur le marché des produits « CARTIER » et intervient en conséquence en matière de conception et de développement desdits produits.

                            et CCS ont souhaité que leurs relations de travail se déroulent conformément aux termes et conditions ci-après exposés dans le présent contrat de travail à durée indéterminée.

**IL A ENSUITE ETE CONVENU CE QUI SUIT :**

**ARTICLE 1 - ATTRIBUTIONS**

                            est engagée à compter du 1$^{er}$ septembre 2006 en qualité de « Directeur Création Accessoires Maroquinerie », Qualification Cadre, position D.

Sous l'autorité de Monsieur                 ou de toute autre personne pouvant s'y substituer, elle exercera toutes les fonctions qui incombent normalement à son poste, à savoir notamment, et sans que cette liste soit exhaustive :

- le développement de lignes existantes de produits et d'articles, créées, fabriquées et commercialisées par CARTIER,
- l'adaptation, la modification et la transformation de lignes existantes de produits et d'articles, créées, fabriquées et commercialisées par CARTIER,
- la participation à la création de produits et d'articles susceptibles d'être fabriqués et commercialisés par CARTIER,
- la participation à la création de nouvelles lignes de produits et d'articles susceptibles d'être fabriquées et commercialisées sous la marque CARTIER.
- toute autre fonction qui résulterait de ses activités actuelles.

                            accepte irrévocablement de se soumettre aux instructions qui lui seront transmises pour que ses créations satisfassent à l'orientation artistique qui lui sera indiquée et à l'image de luxe recherchée.

Dans la même finalité,                   fournira ses meilleurs efforts pour collaborer avec les autres salariés notamment créateurs de CCS et accepte irrévocablement que ses contributions aux Créations CARTIER soient modifiées et adaptées.

En outre,               accepte d'exercer son travail créatif dans le respect de l'héritage esthétique et de l'identité « CARTIER » matérialisée notamment par un important fonds documentaire et d'archives ainsi que par l'ensemble des lignes, gammes et produits commercialisés sous la marque « CARTIER » par le passé et/ou à ce jour.

Pour permettre l'exploitation par CARTIER des Créations CARTIER,                  réalisera tous croquis, dessins, plans, maquettes, photographies nécessaires et les remettra datés à CCS.

Par ailleurs,                effectuera toutes études complémentaires et produira ou fera produire tous prototypes nécessaires pour permettre de faire fabriquer des produits et les rendre conformes aux normes en vigueur et à la direction artistique qui lui sera demandée.

## ARTICLE 2 – DUREE DU TRAVAIL

                devra respecter l'horaire collectif en vigueur au sein de CCS.

## ARTICLE 3 – PROPRIETE INTELLECTUELLE

- Il est rappelé que                          réalisera son travail créatif selon les directives artistiques et commerciales de CCS, grâce aux moyens mis à disposition par CCS, notamment sur la base d'un fonds documentaire et d'archives portant sur des modèles « CARTIER » préexistants, avec d'autres designers dont les contributions fusionneront avec les siennes au sein de produits et gammes de produits divulgués sous la marque « CARTIER ».

                accepte irrévocablement que sa mission s'inscrive sous l'autorité de CCS dans le cadre d'un processus créatif collectif faisant intervenir, à tous les stades de la conception et de la réalisation, d'autres personnes, salariées ou non, choisies par CCS.

- Le travail créatif que                          accomplira en exécution de son contrat de travail sera la propriété exclusive de CCS ; ainsi, les dessins ou designs de toutes natures qu'elle crée ou à l'élaboration desquels elle prend part dans l'exercice de son activité au service de CCS appartiennent à CCS, conformément à la loi suisse, notamment à l'article 332 du Code des obligations, par application de l'article 14 ci-après.

CCS ou ses ayants droit pourront donc sans aucune restriction reproduire les Créations, les représenter et les fabriquer, et ce sous toutes formes, tous supports, par tous moyens et en nombre illimité. CCS ou ses ayants droits pourront également modifier, adapter, retravailler sans restriction ces Créations, ce que                          accepte expressément.

De manière générale,                          s'interdit d'effectuer un quelconque dépôt de propriété industrielle, tel que marque(s), dessin(s) et modèle(s) et/ou brevet(s) portant sur les Créations CARTIER qui sont propriété exclusive de CCS.

Par ailleurs, lorsque, selon les différentes législations en vigueur, la protection des Créations CARTIER, propriété de CCS, implique l'accomplissement de toutes formalités,
prêtera son concours à CCS en accomplissant toute diligence et/ou en régularisant tout document nécessaire à cet effet.                          reconnaît que tout retard dans l'accomplissement desdites formalités pourrait affecter significativement la protection des droits de propriété intellectuelle de CCS et constituerait un manquement au présent contrat.

## ARTICLE 4 - EXCLUSIVITE

Il est rappelé l'obligation pour                          de consacrer la totalité de son temps de travail à CCS.

Toutes les autres activités, même accessoires, qui seraient rémunérées ou qui pourraient, d'une manière quelconque, être préjudiciables au travail que                          fournit à CCS de même que la coopération avec d'autres entreprises ou la prise de participations dans de telles entreprises, nécessitent l'accord préalable exprès et écrit de CCS.

## ARTICLE 5 - CONFIDENTIALITE

Il est également rappelé l'obligation pour                          de respecter une confidentialité absolue concernant toutes les informations qu'elle recueille à l'occasion de ses fonctions au sein de CCS et, notamment, pour ce qui concerne les secrets des affaires ou les secrets des entreprises et du groupe auquel appartient CCS. Cette obligation doit être respectée vis-à-vis de tous tiers, y inclus des salariés de CCS qui n'ont pas accès aux dites informations et/ou documents.

L'obligation de confidentialité couvre les détails du présent contrat.

Elle couvre également les documents (dessins, ébauches...) que                    établirait à l'occasion de son travail, et qu'elle s'interdit de sortir du lieu de travail, sauf autorisation expresse de CCS.

Cette obligation de confidentialité restera en vigueur, sans limitation dans le temps, même après la cessation du présent contrat.

### ARTICLE 6 – PROPRIETE DU MATERIEL / OBLIGATION DE RESTITUTION

                    reconnaît que l'ensemble des outils, instruments, fournitures (tels papier, gouache, etc.) qui lui sont remis par CCS pour les besoins de son travail sont la propriété de CCS.

Lors de la cessation du présent contrat, pour quelque raison que ce soit, tiendra à la disposition immédiate de CCS tout le matériel, les fournitures et documents qu'elle aura pu obtenir ou établir dans sa fonction, y inclus ses propres notes, dessins, esquisses, croquis, plans, etc. professionnels.

Cette obligation s'applique également s'agissant des copies qu'elle aurait pu effectuer ou faire effectuer.

         n'a aucun droit de rétention concernant ces documents. Il est, en outre, expressément convenu que notamment le fichier des clients est la propriété exclusive de CCS ou de ses ayants droit.

La même obligation s'applique concernant tout matériel qui aurait pu être confié à          et qui est resté la propriété de CCS ou une entreprise de leasing ou autre avec laquelle CCS a conclu un contrat à ce sujet.

### ARTICLE 7 - LIEU DE TRAVAIL- MOBILITE - VOYAGES

                    exercera ses fonctions à l'adresse suivante : 15, Cité du Retiro, 75008 Paris.

Ce lieu de travail n'est communiqué qu'à titre informatif.

              accepte également dès à présent tout changement éventuel du lieu de travail qui pourrait lui être demandé ultérieurement par CCS sur d'autres sites, actuels ou futurs de la société à l'intérieur de la Région Parisienne, ce qui ne pourra en aucun cas constituer une modification du présent contrat de travail.

              accepte dès à présent, expressément, de se rendre, selon un rythme qui pourra être mensuel, au siège social de CCS situé 8, boulevard James Fazy – 1201 Genève - Suisse, afin de participer à la coordination de la conception et de la mise au point des modèles commercialisés sous la marque « CARTIER ».

              s'engage à effectuer, en France et à l'étranger, tous les voyages que nécessitent ses fonctions ou qui pourraient être requis par la Direction.

### ARTICLE 8 – FRAIS

CCS remboursera à                         , sur la base des justificatifs des dépenses qu'elle aura engagées, les frais raisonnables de voyage, de représentation, et autres frais professionnels qu'elle exposera dans l'intérêt et à la demande de CCS et ce, conformément aux règles relatives aux frais professionnels existantes et/ou qui pourront être établies par CCS.

## ARTICLE 9 – CLAUSE DE NON CONCURRENCE

reconnaît qu'elle doit s'abstenir de faire bénéficier une maison concurrente de documents, procédés de fabrication ou autres renseignements provenant de CCS.

En cas de rupture du présent contrat, quels qu'en soient la cause et l'auteur, s'interdit, en raison de la nature de ses attributions, d'entrer au service d'une entreprise concurrente ou de participer, directement ou indirectement, par personne interposée ou en qualité d'intermédiaire, dans son propre intérêt ou dans l'intérêt d'un tiers, à une activité concurrente ou potentiellement concurrente.

Cette interdiction est applicable pendant une durée de six (6) mois à compter de la fin du contrat de travail et s'étend sur le territoire de la France entière.

Le respect de cette interdiction donnera lieu à rémunération dans les conditions fixées par la convention collective applicable (article 12 de l'avenant « Cadres » de la convention collective de la B.J.O.C.) c'est-à-dire au versement d'une indemnité mensuelle spéciale brute égale à la moitié de la moyenne mensuelle des appointements bruts perçus au cours des 12 derniers mois précédant le départ de la société.

Toutefois, CCS se réserve le droit, en cas de rupture du contrat de travail, de ne pas mettre en œuvre cette clause de non-concurrence ; dans ce cas, elle préviendra                    par écrit dans les huit (8) jours suivant la notification du préavis ou, en cas de non-observation du préavis, dans les huit (8) jours suivant la rupture effective du contrat.


## ARTICLE 10 – REMUNERATION

En rémunération du travail accompli en exécution de son contrat de travail,
percevra une rémunération forfaitaire annuelle brute d'un montant de 153.400 Euros (cent cinquante trois mille quatre cents Euros) payables en treize (13) mensualités.

La rémunération ci-dessus mentionnée sera payée, déduction faite des charges sociales incombant légalement aux salariés.

A l'issue de chaque année fiscale, et en fonction de la réalisation des objectifs qui lui seront fixés par sa hiérarchie,                    pourra également prétendre recevoir une rémunération complémentaire allant jusqu'à 25% de sa rémunération annuelle brute, ladite rémunération étant destinée à exprimer la satisfaction de la Direction Générale de CCS quant au travail réalisé par                    Par ailleurs, cette rémunération sera également déterminée chaque année en fonction des règles du Groupe applicables à l'année de référence.

A toutes fins utiles, il est expressément convenu et accepté entre les Parties que la rémunération globale versée par CCS à                    couvre l'intégralité de la rémunération à laquelle                    peut prétendre en contrepartie de l'accomplissement de la mission créative qui est la sienne, à savoir la réalisation pour le compte de CCS, de contributions aux Créations CARTIER, et ce à quelque titre que ce soit, à titre individuel ou collectif.

                   se déclare en conséquence irrévocablement satisfaite de la contrepartie qui lui est allouée et renonce expressément à toute autre forme de rémunération complémentaire quelle qu'elle soit et à quelque titre que ce soit.

6

### ARTICLE 11 – DUREE – ANCIENNETE – PERIODE D'ESSAI

Le présent contrat a une durée indéterminée.

En raison du précédent emploi occupé par                    au sein de CARTIER
INTERNATIONAL, son ancienneté sera reprise à dater du        De ce fait,
        sera dispensée d'effectuer une période d'essai.

L'indemnité compensatrice de congés payés dont elle bénéficiait au jour de la rupture de son contrat de travail avec la société CARTIER INTERNATIONAL est transférée à la société CCS qui la maintient. De la même façon, la prime de 13$^{ème}$ mois sera également transférée à la société CCS.

Pour les mêmes raisons, le salarié bénéficiera de la mutuelle sans aucun délai de carence quel qu'il soit, dans le cas où il aurait déjà été couvert dans le cadre du contrat Groupe.

                    bénéficiera également des avantages sociaux institués en faveur du personnel.

### ARTICLE 12 – RETRAITE / PREVOYANCE

En sa qualité de cadre,                    sera admis, à compter de son engagement, au
bénéfice :

> - du régime de retraite par affiliation à la Caisse des Cadres (caisse CARTIER CREATION STUDIO)

    - CIRCIA
    - RESURCA
      Groupe TAITBOUT : 5 rue de Dunkerque – 75477 Paris Cedex 10

> - du régime de prévoyance par affiliation à la caisse de prévoyance :

    - QUATREM : 45-47 rue Le Pelletier BP 46009 Paris Cedex 09

> - du régime de frais de santé : mutuelle :

    - SIACI/RC (Prévoyance Retraite Conseil) : immeuble Le Doublon 11 avenue Dubonnet 92400 Courbevoie

### ARTICLE 13 – STOCK-OPTIONS

                    sera éligible au plan de Stock-Options Richemont (« Richemont Stock Option Plan ») lors de la prochaine attribution annuelle, sous réserve d'en remplir les conditions. Toute autre attribution d'options restera à la discrétion du Groupe et se conformera aux règles du plan. Le Groupe se réserve par ailleurs tout droit de modification concernant les règles du plan ou le plan lui-même.

### ARTICLE 14 - DISPOSITIONS FINALES

Toutes les modifications du présent accord et tous les compléments à lui apporter doivent être convenus, pour être valables, par voie d'avenants écrits. Le présent contrat de travail demeure soumis au droit français du Travail, à la Convention Collective Nationale Bijouterie, Joaillerie, Orfèvrerie et activités qui s'y rattachent, au règlement intérieur et enfin aux usages en vigueur dans l'entreprise, à l'exception de l'article 3 soumis de convention exprès entre les parties à la loi suisse.

Au cas où une ou plusieurs dispositions du présent accord sont ou deviendraient inapplicables, les autres dispositions contractuelles n'en seraient pas pour autant affectées. Les parties contractantes conviennent, dès à présent, qu'aux lieu et place des dispositions inapplicables seront appliquées des dispositions de substitution qui devront dans leurs effets économiques se rapprocher le plus possible des termes du présent contrat.

*lu et approuvé - bon pour accord*

Fait à Paris en deux (2) originaux.
Le 1<sup>er</sup> septembre 2006

«Lu et approuvé – Bon pour accord »        « Lu et approuvé - Bon pour accord»

*lu et approuvé Bon pour accord*

Direction des Ressources Humaines

« Lu et approuve - Bon pour accord»

*Lu et approuvé - Bon pour accord*

CARTIER

JEWELERS

PARIS   LONDON       NEW YORK

WORK CONTRACT FOR AN INDEFINITE PERIOD

for [redacted]

1. The CARTIER CREATION STUDIO company SA under Swiss law

   with headquarters located at:
   
   Geneva
   Switzerland
   
   whose French branch is located 37 Rue Boissy d'Anglas, 75008 Paris
   Represented for this purposes by Mr. Bernard Fomas, acting as Administrator.
   
   hereafter "CCS"

ON THE ONE HAND,

AND

2. [redacted]

Born on: [redacted] at [redacted]

of citizenship [redacted]

social security number: [redacted]

hereafter "[redacted]"

ON THE OTHER HAND,

Hereafter together "the Parties"

CARTIER CREATION STUDIO SA

HEAD QUARTERS; 8 BOULEVARD JAMES FAZY - 1201 GENEVA- SWITZERLAND

FRANCE BRANCH - 37, RUE BOISSY D'ANGLAS - 75008
CTR PAR15 8 485 331 466

**WHAT FOLLOWS HAS BEEN PRESENTED PREVIOUSLY:**

CCS, a company under Swiss law, belongs in the CARTIER group, a notorious company of the jewelry, clockmaking, and luxury sector in general, that manufactures and market luxury products under the brand 'CARTIER.'

CCS has for object to coordinate the design, the creation, and finalization of the products marketed under the brand 'CARTIER.'

In this context, CCS ensures from Switzerland and on a European scale the internal and external coordination, by salaried employees and independent providers of all nationalities, of preparatory acts for marketing 'CARTIER' products, and consequently intervenes regarding the design and development of aforesaid products.

[redacted] and CCS wished their work relationship to take place in accordance to the terms and conditions exposed hereafter in this work agreement for an indefinite period.

**IT HAS THEN BEEN AGREED AS FOLLOWS**

**ARTICLE 1 - DUTIES**

[redacted] is hired from September 1, 2006 as 'Director of Leatherwork Accessories Creation', Qualification Manager, position D.

Under the authority of Mr. [redacted] or of any other person who can be substituted to her, she will have all functions that are normally incumbent upon her position, i.e. notably, and without this list to be exhaustive

- developing existing lines of products and articles, created, manufactured, and marketed by CARTIER,
- adapting, modifying, and transforming existing lines of products and articles, created, manufactured, and marketed by CARTIER,
- contributing to the creation of products and articles susceptible to be manufactured and marketed by CARTIER,
- contributing to the creation of new lines of product and article susceptible to be manufactured and marketed under the CARTIER brand,
- any other function that would results from her current activities.

*[redacted]* accepts to submit irrevocably to the instructions that will be transmitted to her so that her creations meet the artistic orientation that will be indicated to her and to the sought after luxury image.

In the same finality, [redacted] will provide her best efforts to collaborate notably with other creative salaried employees of CCS and accepts irrevocably that her contributions to CARTIERS Creations be modified and adapted.

In addition, [redacted] accepts to exert her creative work respecting 'CARTIER' aesthetic inheritance and identity, materialized notably by a large documentary and archive background as well as by all of the lines, line-ups and products marketed under the 'CARTIER' brand in the past and/or today.

In order for CARTIER to exploit CARTIERS Creations, [redacted] shall realize any sketches, drawings, plans, models, photographs necessary and shall deliver them dated to CCS.

In addition, *[redacted]* shall do all complementary studies and shall produce or shall have made all necessary prototypes enabling to have the products manufactured and to make them compliant with applicable norms and the artistic orientation that may be asked from her.

ARTICLE 2 - DURATION OF THE JOB

[redacted] shall respect the collective schedule implemented within CCS.  ARTICLE 3 - INTELLECTUAL

PROPERTY

- It is reminded that [redacted] shall realize her creative work notably according to the artistic and commercial instructions of CCS, using the means available from CCS, based on a documentary and archive background involving preexisting 'CARTIER' models, with other designers whose contributions will merge with her within products and product lines distributed under the 'CARTIER' brand.

[redacted] accepts irrevocably that her mission is subject to the authority of CCS in the context of a collective creative process involving, at all stages of the design and realization, other people, salaried or not, chosen by CCS.

- The creative work that [redacted] shall accomplish in executing her work agreement will be the exclusive property of CCS; so, the drawings or designs of all kinds that she creates or the development of which she participate to within her activity at CCS service belong notably to CCS, in accordance to Swiss laws, in particular to article 332 of the Code of obligations, by application of article 14 hereafter.

CCS or its eligible persons may thus, without any restriction, reproduce the Creations, represent them, and manufacture them, under any form, support, by all means, and in unlimited numbers. CCS or its eligible persons may also modify, adapt, rework without restriction such Creations, which [redacted] accepts expressly.

In general, [redacted] forbids herself from applying for any industrial property, such as for brand(s), drawing(s), and model(s), and/or patent(s) concerning CARTIER Creations which are the exclusive property of CCS.

Moreover, when, according to different applicable legislations, the protection of CARTIER's Creations, property of CCS, implicates completing all formalities, [redacted] shall afford her support to CCS while accomplishing with diligence and/or regularizing all necessary document to that effect. [redacted] recognizes that any delay in completing aforesaid formalities could significantly affect the protection of CCS property intellectual rights, and could constitute a breach of this agreement.

ARTICLE 4 - EXCLUSIVITY

As reminded, [redacted] has the obligation to dedicate the totality her work time to CCS.

All other activities, even accessory, that would be remunerated or may, in any manner, be damaging to the work provided by [redacted] for CCS as well as the cooperation with others companies or equity participation in such companies, require CCS prior express and written agreement.

ARTICLE 5 - CONFIDENTIALITY

It is also reminded, the obligation for [redacted] to respect an absolute confidentiality concerning all information that she collects in realizing her functions within CCS and, namely, regarding business secrets or secrets of companies and of the group to which belongs CCS. This obligation must be respected with regards to any third party, including CCS employees who don't have access to said information and/or documents.

The obligation of confidentiality covers the details of this agreement.

It also covers the documents (drawings, drafts...) that [redacted] would produce during her work, and that she forbids herself from taking out of the workplace, except with the express authorization of CCS.

This obligation of confidentiality will remain applicable, without limitation in time, even after this agreement ceases.

ARTICLE 6 - MATERIAL PROPERTY / OBLIGATION OF RESTITUTION

[redacted] acknowledges that all tools, instruments, supplies (such as paper, gouache, etc.) which are provided to her by CCS for the purpose of her work are the property of CCS.

Upon termination of this agreement, for whatever reason, [redacted] will hold for immediate disposition by CCS any material, supply, and document that she could have obtained or produce within her function, including her own professional notes, drawings, sketches, drafts, plans, etc.

This obligation also applies to copies that she made herself or had made.

*[redacted]* has no ownership rights concerning these documents. In addition, it is expressly agreed that the customer file namely is the exclusive property of CCS or its eligible persons.

The same obligation applies concerning all material that may have been entrusted to [redacted], and that remained CCS' property or that of a leasing or other company with which CCS concluded an agreement regarding that matter.

ARTICLE 7 - PLACE OF WORK - MOBILITY - TRAVELS

[redacted] shall exert her functions at the following address: 15, Cité du Retiro - 75008 Paris This workplace is only for information purpose.

[redacted] also accepts as of now, any possible workplace change to other present or future sites that she may be subsequently asked to move to by CCS, within the Parisian Region, which may not constitute on any account a modification of this work agreement.

[redacted] accepts as of now, expressly, to travel, according to a frequency that may be monthly, to CCS headquarters located 8, Boulevard James Fazy - 1201 Geneva - Switzerland, in order to participate in the design and finalization coordination of models marketed under the 'CARTIER' brand.

[redacted] agrees to make, in France and abroad, all trips required by her functions or by the Management.

ARTICLE 8 - EXPENSES

CCS will reimbursed [redacted], based on vouchers, expenses what she will have incurred, reasonable travel, representation expenses, and other professional expenses that she will incurs in the interest and upon CCS request, according to existing rules associated with professional expenses and/or that may be established by CCS.

ARTICLE 9 - CLAUSE OF NON COMPETITION

[redacted] recognizes that she must refrain from having a competitor benefit from CCS documents, manufacture processes or other information.

In the event of breach of this agreement, *[redacted]* forbids herself, from the nature of her assignments, to be hired by a competitor company or to participate, directly or indirectly, through an intermediary person, or as a mediator, in her own interest or in the interest of a third party, in a competitor or potentially competitor activity.

This interdiction is applicable for a six (6) months period starting at the end of the work agreement and extending over the whole territory of France.

The respect of this interdiction will lead to compensation under the conditions set by the applicable collective convention (article 12 of supplemental agreement 'managers' of the B.J.O.C. collective convention) i.e. the remittance of a gross special monthly indemnity equal to half of the monthly average of gross pay received over the last 12 months preceding the departure from the company.

However, CCS reserves the right, in case of breach of work agreement, not to apply this clause of non competition; in that case, it will notify [redacted] in writing within eight (8) days following the notice notification or, in case of notice non observation, within eight (8) days from the actual breach of agreement.

ARTICLE 10 - REMUNERATION

As remuneration for work accomplished in performing of her work agreement, [redacted] shall receive a flat yearly gross compensation in the amount of 153,400 Euros (hundred fifty three thousand four hundred Euros) payable in thirteen (13) installments.

The above mentioned compensation shall be paid, deduction made for fringe benefits legally payable by salaried employees.

At the end of each fiscal year, and according to the realization of objectives set to her by her hierarchy, [redacted] may also expect to receive a complementary compensation of up to 25% of her yearly gross compensation, said compensation being intended to express the satisfaction of CCS management for the

work completed by [redacted]. In addition, this compensation will also be determined each year according to the Group rules applicable to the reference year.

For any purpose it may serve, it is expressly agreed and accepted between the Parties that the global compensation paid by CCS to [redacted]    covers the entirety of the compensation to which [redacted] is entitled as counterpart for her creative mission achievement, i.e. realizing contributions at CARTIER's Creations for CCS, and this under whatever quality, whether individual or collective.

Consequently, [redacted] declares herself irrevocably satisfied of the counterpart that is assigned to her and expressly renounce to any other form of complementary compensation whatever and in which quality they may be.

ARTICLE 11 - DURATION - SENIORITY - TRIAL PERIOD

This agreement is for an indefinite period.

Because of prior employment by [redacted] within CARTIER INTERNATIONAL, her seniority will be referred to as of [redacted]. From this fact, [redacted] will not need a trial period.

The compensatory indemnity for paid leave she was entitled to on the day of the breach of her work agreement with CARTIER INTERNATIONAL is transferred to CCS company which maintains it. Similarly, the 13th month bonus will also be transferred to CCS.

For the same reasons, the employee will benefit from health insurance without any waiting period, in case where she would already have been covered under the Group policy.

[redacted] shall benefit also from social advantages instituted for the staff.

ARTICLE 12 - RETIREMENT / PROVISION FOR OLD AGE

In her manager quality, [redacted] will be admitted, as of her hiring date, to benefit from

- ➢ the retirement regime by affiliation to the Caisse des Cadres (CARTIER CREATION STUDIO fund)
    - CIRCIA
    - RESURCA

    TAITBOUT Group: 5 rue de Dunkerque - 75477 Paris Cedex 10
- ➢ the provision for old age regime by affiliation to the provision for old age fund
    - QUATREM : 45-47 rue Le Pelletier BP 46009 Paris Cedex 09
- ➢ the health expense regime: mutual
    - SIACI/RC (Prévoyance Retraite Conseil) : immeuble Le Doublon 11 avenue Dubonnet 92400 Courbevoie

ARTICLE 13 - STOCK-OPTIONS

[redacted] will be eligible for the Richemont Stock-Options plan ('Richemont Stock Option Plan ') at the next yearly distribution, subject to fulfilling its conditions. Any other option distribution shall remain at the discretion of the Group and shall comply with the plan rules. The Group reserves also any rights for modification concerning the plan rules or the plan itself.

ARTICLE 14 – FINAL PROVISIONS

All modifications to this agreement and all amendments contributed to it must be agreed upon, to be valid, through written supplementary agreements. This work agreement remains under French labor laws, the Jewelry, Goldwork National Collective Convention (Convention Collective Nationale Bijouterie, Joaillerie, Orfèvrerie), and pertaining activities, to internal regulations, and finally to applicable usages within the company, with the exception of article 3 under Swiss law by express convention between the parties.

In the event one or several provisions of this agreement are or would become inapplicable, the other contractual provisions would not be affected. The contracting parties agree that, from now on, in lieu of

inapplicable provisions, substitution provisions as close as possible in their economic effects to the terms of this agreement will be applied.

Made in Paris in two (2) original copies.

September 1, 2006                              [handwritten]" Read and approved - for agreement"

[handwritten]" Read and approved - for agreement"    "Read and approved - for agreement"

[handwritten] "Read and approved - for agreement"

Human Resources Management

"Read and approved - for agreement"

[handwritten] "Read and approved - for agreement"