UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
:
YURMAN STUDIO, INC. and YURMAN : Civil Action No. 07-1241 (SAS)(HP)
DESIGN, INC., : (Action No. 1)
:
        Plaintiffs/Counter-Defendants, :
:
    - against - :
:
ELENA CASTANEDA and EJEWELER LLC :
d/b/a OVERSTOCKJEWELER.COM, :
:
        Defendants/Counter-Plaintiffs. :
:
-------------------------------------------------------------- x
-------------------------------------------------------------- x
:
CARTIER, a division of RICHEMONT NORTH : Civil Action No. 07-7862 (SAS)(HP)
AMERICA, INC., CARTIER INTERNATIONAL, : (Action No. 2)
N.V., CARTIER CREATION STUDIO, S.A., VAN :
CLEEF & ARPELS S.A., VAN CLEEF & :
ARPELS, INC., VAN CLEEF & ARPELS :
DISTRIBUTION, INC., GUCCI AMERICA, INC., :
and BULGARI S.p.A., :
:
        Plaintiffs, :
:
    - against - :
:
ELENA CASTANEDA and EJEWELER LLC :
d/b/a OVERSTOCKJEWELER.COM, :
:
        Defendants. :
:
-------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
YURMAN STUDIO, INC., YURMAN DESIGN, INC., CARTIER, A DIVISION OF
RICHEMONT NORTH AMERICA, INC., CARTIER INTERNATIONAL, N.V., CARTIER
CREATION STUDIO, S.A., GUCCI AMERICA, INC., AND BULGARI S.P.A.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000
*Attorneys for Plaintiffs*

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion for partial summary judgment against Defendants.

## I. CARTIER AND GUCCI ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR TRADEMARK COUNTERFEITING

Defendants oppose Cartier's and Gucci's motion for summary judgment on their claims for trademark counterfeiting on the ground that Defendants' infringing products are not "substantially indistinguishable" from Cartier's and Gucci's famous registered design marks. Defs' Br. at 5. As the Court can see for itself, this simply is not correct. Dube Decl. Exs. A-G; Moss Decl. Ex. J; Local Civil Rule 56.1 Statement ("56.1 Statement") ¶¶ 52, 63 (including side-by-side comparisons of Plaintiffs' registered marks and Defendants' counterfeit products). Defendants' counterfeit products contain deliberate and meticulous copies of Cartier's and Gucci's registered design marks.

Tellingly, Defendants' main argument here is that Plaintiffs provided the Court with "unclear, reduced images of Defendants' products". Defs' Br. at 6. While untrue — Plaintiffs provided the Court with color printouts of Defendants' counterfeit products exactly as they appear on the Overstock Jeweler website, as well as individual side-by-side comparison charts — Defendants only provided the Court with "clearer" images of two of the twenty-six counterfeit products at issue. *See* Zarin Decl. Ex. 13. Had Defendants provided "clearer" images of the other twenty-four items, their counterfeiting of Plaintiffs' designs would be that much "clearer".[1]

Not only is it the case that Defendants' counterfeit products contain designs substantially indistinguishable from Cartier's and Gucci's registered design marks, but Defendants openly promote them as such. According to Defendants, their knockoffs are "strikingly similar to the real

---

[1] Although Plaintiffs believe that the images included in their moving submission provide a sufficient basis for the Court to conclude that Defendants' infringing products are counterfeits of Plaintiffs' registered design marks, Plaintiffs would be happy to provide the Court with physical samples and/or enlarged images of Defendants' infringing products.

1

thing" (Dube Decl. Ex. C) and capture "100 percent of the look and feel" (*Id.* at Ex. B) of Plaintiffs' registered design marks. Indeed, Defendants' entire business model is built around convincing consumers that their designs are substantially indistinguishable from Plaintiffs' famous designs. The problem for Defendants here is that these particular designs happen to be registered trademarks, and therefore their slavish copying turns into counterfeiting.

Defendants further argue that Cartier and Gucci are not entitled to summary judgment on two of their eight counterfeiting claims — their claims based on Cartier's "tic-tac-toe" (Reg. No. 2,436,100) and Gucci's stylized letter "G" (Reg. No. 2,234,272) designs — because such registrations are for "watches, in Class 14", and Defendants only counterfeit these designs on jewelry items. Defendants, however, overlook the fact that the United States Patent and Trademark Office's overall goods classification for Class 14 is "Jewelry", and that "horological and chronometric instruments", namely watches, are listed as one type or subset of "jewelry." *See Trademark Manual of Examining Procedure* § 1401.02 (5th ed. 2008) ("Class 14 [*i.e.*, "Jewelry"] includes mainly precious metals, goods in metals not included in other classes and, in general jewellery, clocks and watches.").[2] Thus, Plaintiffs' Class 14 registrations cover watches as an article of jewelry, and Defendants are counterfeiting Plaintiffs' registered designs on articles of jewelry.

Moreover, Defendants' counsel, Scott Zarin, Esq., states in his declaration, under penalty of perjury, that:

> In Gucci's 'G' design, the symbol is a capital letter 'G' standing upright. On Defendants' allegedly infringing bracelet, the symbol can be seen as a small letter 'e' or a backwards number '6', ***but never*** a capital letter 'G' standing upright.

---

[2] Defendants' contention that Cartier is not entitled to summary judgment on its counterfeiting claims because one of Cartier's screw motif marks, Serial No. 79037955 (covering a series of three simulated screw-heads), is still in the application stage, is of no moment. Each of Defendants' fourteen counterfeit products also violate Cartier's registration for a single simulated screw head (U.S. Trademark Reg. No. 3,162,410). *See* Dube Decl. Ex. E.

2

Zarin Decl. ¶ 28 (emphasis provided). However, even a child can see that the "symbol" appearing on the infringing product (Item No. sch-edf16) most definitely *does* appear as a capital letter "G", and, moreover, is substantially indistinguishable from Gucci's registered "G" design[3]:



Finally, Defendants suggest that Plaintiffs' counterfeiting claims may not be decided on summary judgment because application of the "substantially indistinguishable" standard involves issues of fact. *See* Defs' Br. at 5. This argument is unpersuasive, as Courts in this Circuit have routinely awarded summary judgment on counterfeiting claims where, as here, a simple eyeballing of the marks in question reveals that they are, in fact, "substantially indistinguishable."[4] In light of Defendants' failure to proffer specific facts showing that there is a genuine issue for trial, Cartier and Gucci are entitled to summary judgment on their claims for trademark counterfeiting.[5]

---

[3] This is just one of the too-many-to-count factual misrepresentations Defendants have made to the Court in connection with the parties' motions for summary judgment. For example, Defendants have submitted false statements regarding (i) when the Overstock Jeweler website started (Plaintiffs' Counter-Statement of Material Facts ¶ 1), (ii) the price range of Defendants' products (*id.* ¶ 3), (iii) the materials (*e.g.*, diamonds) used in Defendants' products (*id.* ¶ 3), (iv) Defendants' continued use of terms such as "replica" and "imitation" to describe their products (*id.* ¶¶ 4-7); (v) Defendants' relationship with Google and MSN (*id.* ¶¶ 15-16), and (vi) Defendants' dealings with Yurman in 2005 (*id.* ¶¶ 62-63). There are many more, too many to list here.

[4] *See, e.g., Cartier Int'l B.V. v. Ben-Menachem*, 2008 WL 64005 (S.D.N.Y. Jan. 3, 2008); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284 (S.D.N.Y. 2003).

[5] Defendants also argue that certain of the products that Cartier claims to infringe its registration for a single simulated head of a screw (U.S. Trademark Reg. No. 3,162,410) are distinguishable because the simulated depression line which appears across the face of screw motif appears at a different angle. Zarin Decl. ¶ 27. This is neither true nor relevant, as Cartier's registration in this design is not limited to any specific angle.

3

## II. YURMAN, CARTIER AND GUCCI ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR WILLFUL COPYRIGHT INFRINGEMENT

Defendants contend that Yurman, Cartier and Gucci are not entitled to summary judgment on their claims for copyright infringement because they have failed to establish "substantial similarity" under the "more discerning ordinary observer" test. Defs' Br. at 7-10. Defendants' rationale for applying the "more discerning ordinary observer" test, as opposed to the "ordinary observer" test, is premised on a fundamental misapplication of copyright law. Mixing wholly incompatible concepts, Defendants argue that because many of Yurman's, Cartier's and Gucci's copyrighted designs employ design elements found in the public domain, the Court must extract those individual design elements prior to conducting its "substantial similarity" analysis. *Id.* at 9. This argument ignores and misapplies the clear law of this Circuit, which has long recognized that copyright, particularly in jewelry design, protects the combination of design elements, not each individual element. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109-10 (2d Cir. 2001); *Yurman Design, Inc. v. Golden Treasure Imp., Inc.*, 275 F. Supp. 2d 506, 515 (S.D.N.Y. 2003).

Defendants nevertheless attempt to circumvent *PAJ* and subvert the Court's substantial similarity analysis by arguing that the Court should apply the "more discerning ordinary observer" test — knowing full well that under this test, were the Court to throw out the public domain design elements in Plaintiffs' copyrighted works, there would be nothing left to protect. The more discerning ordinary observer test is not used in cases like this because, particularly with jewelry designs, it is the overall combination of design elements that are subjected to the "public domain" test, not each individual element. As Judge Pitman recognized in *M. Lady, LLC v. AJI, Inc.*, 2007 WL 2728711 (S.D.N.Y. Sept. 19, 2007), attempting to break down a piece of jewelry into its protectible and non-protectible elements for purposes of applying the more discerning ordinary observer test is improper because "'although the jewelry designs . . . are created from a combination of common elements, the designs are protected *in their entirety* because it is the *combination of*

4

*elements* that is copyrighted.'" *Id.* (quoting *Golden Treasure*, 275 F. Supp. 2d at 517 (emphasis in original)). Indeed, the defendant in *Golden Treasure* tried the same argument that Defendants advance here, to no avail. *Golden Treasure*, 275 F. Supp. 2d at 517 (noting that with respect to jewelry design, it is the combination of elements that is protected, "[i]t makes no sense . . . to look at the designs by excluding elements such as cable and gemstones and consider what is left.").

As indicated in Plaintiffs' moving papers, application of the ordinary observer test here mandates only one result — that Defendants' products are slavish copies, and deliberate attempts to capture the "total concept and feel" of the Yurman, Cartier and Gucci copyrighted designs. These are clear-cut cases of copyright infringement.[6] *See* Yurman Decl. Exs. A-L; Dube Decl. Ex. L; Gucci Decl. Exs. B-I; 56.1 Statement ¶¶ 45, 56, 61. Thus, Plaintiffs have established "substantial similarity", and are entitled to entitled to summary judgment on their copyright infringement claims.

### III. YURMAN, CARTIER AND BULGARI ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR DESIGN PATENT INFRINGEMENT

Defendants oppose Yurman's, Cartier's and Bulgari's motion for summary judgment on their claims for design patent infringement on the ground that a side-by-side comparison of Plaintiffs' patented designs and Defendants' deliberate knockoffs "creates significant doubt" as to whether the designs are "substantially the same". Defs' Br. at 11. Not surprisingly, however, Defendants again fail to identify a single design element that distinguishes any of their knockoffs from Plaintiffs' patented designs, much less any difference in overall appearance.[7] Indeed, as

---

[6] Any doubt that it was Defendants' intention to capture the "total concept and feel" of Plaintiffs' copyrighted designs, is dispelled by Defendants' own product descriptions. *See* Dube Decl. Ex. L ("[a]lthough not 100 percent Cartier you still get *100 percent of the look and feel*"); Moss Decl. Ex. C ("*[t]rue designers* [sic] *look* at a fraction of the price") (emphasis added).

[7] "In determining whether two designs are substantially the same, '[t]he criterion is deception of the ordinary observer such that one design would be confused with the other.'" *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993); *see also Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1988) ("minor differences between the patented design and an accused article's design cannot, and shall not, prevent a finding of infringement").

5

indicated in Defendants' own product descriptions, Defendants' designs are noticeably and intentionally "substantially the same" as Plaintiffs' patented designs.[8] This is again reinforced by the side-by-side comparisons included in Plaintiffs' moving papers, which leave no doubt that Yurman's, Cartier's and Bulgari's patented designs are substantially the same as the designs used in Defendants' counterpart infringements. *See* Yurman Decl. Ex. M; Dube Decl. Exs. H-K; Rapone Decl. Exs. A-C; 56.1 Statement ¶¶ 47, 54, 67.[9]

Defendants further contend that even if this Court finds — which it should — that Defendants have infringed Plaintiffs' design patents, the Court should nevertheless deny Plaintiffs' request for permanent injunctive relief as moot. *See* Defs' Br. at 10-11. Defendants base this baffling argument on their apparent recent "decision" — corresponding with the filing of Plaintiffs' motion — to stop selling the thirteen products on their website that blatantly infringe Plaintiffs' design patents. *Id.* However, the fact that Defendants have stopped selling the infringing products today, after years of sales and nine months of litigation, in no way guarantees that they will not reintroduce these products, or additional products that infringe the these design patents, tomorrow. Only a permanent injunction and the highest available damages award may prevent Defendants from picking up where they left off. Accordingly, the Court should award Yurman, Cartier and Bulgari summary judgment on their claims for design patent infringement in all respects.

---

[8] *See, e.g.,* Dube Decl. Ex. J ("This exotic ring is an *imitation* of Cartier-esque [sic] well known design from the Orchid Collection. . . . The designer original piece retails for thousands of dollars and now you can get the look with a bargain price."); Rapone Decl. Ex. B ("this ring . . . evokes the *same* understated elegance [as Bulgari's genuine design]") (emphasis added).

[9] Defendants' argument that Bulgari cannot assert an infringement claim based on a patent (Patent No. Des. 338,629) that expired one month prior to the commencement of suit is incorrect as a matter of law. *See* Defs' Br. at 11. Bulgari has standing to seek all damages arising from Defendants' infringement of its patented design during the life of the patent (August 24, 1993 through August 24, 2007). *See* 3 Moy's Walker on Patents § 11:3 (4th ed. 2007) (citing *Custer v. U.S.*, 203 U.S.P.Q. 784 (Ct. Cl. 1979) (plaintiff "can recover only for acts of infringement committed after the date of issue and prior to the date of expiration of the patent. …")).

## IV. DEFENDANTS HAVE WILLFULLY INFRINGED PLAINTIFFS' DESIGN MARKS, COPYRIGHTS AND DESIGN PATENTS

Defendants contend that Plaintiffs are not entitled to an award of statutory or treble damages, or attorneys fees, because Plaintiffs have not established that they acted willfully in infringing Plaintiffs' intellectual property rights.[10] Specifically, and once again disingenuously, Defendants argue that Plaintiffs' *only* evidence of willfulness is (i) Defendants' continued sale of infringing products after Plaintiffs "reasonably substantiated" their intellectual property rights, and (ii) Defendants' failure to ask their knockoff suppliers if any of the products they sell infringe the intellectual property rights of Plaintiffs, this being insufficient "[a]s a matter of law." Defs' Br. at 12. While this evidence alone is more than sufficient to establish Defendants' bad faith, it is not even close to the end of the story. For example, Plaintiffs have also pointed to the following evidence of bad faith: (i) Defendants employ the word "overstock" to falsely connote that they are selling Plaintiffs' genuine items; (ii) Defendants utilize phony, artificially inflated "list prices" to further the misperception that they are selling genuine "overstock" products; (iii) nearly every one of Defendants' product descriptions trumpets the fact that Defendants' products are knockoffs of Plaintiffs' famous designs[11]; (iv) Defendants purposefully market their knockoffs as offering the cachet associated with Plaintiffs' genuine goods without the premium price tag (*i.e.*, directly promoting their knockoffs by encouraging purchasers to create post-sale confusion)[12]; (v) Defendants purposefully market their knockoffs as offering the look and feel of Plaintiffs'

---

[10] Plaintiffs are entitled to statutory damages under 15 U.S.C. § 1117(c)(2) (willful trademark counterfeiting) and 17 U.S.C. § 504(c)(2) (willful copyright infringement), and treble damages under 35 U.S.C. § 289 (willful design patent infringement), as well as attorneys fees under 15 U.S.C. § 1117(a) (as an exceptional case of trademark counterfeiting) and 35 U.S.C. § 285 (as an exceptional case of design patent infringement).

[11] Dube Decl. Ex. C ("[t]his Cartier-esque Inspired Pasha Collection pendant . . . is *strikingly similar* to the real thing"); Moss Decl. Ex. B ("this Gucci Jewelry Collection *replica* bracelet").

[12] *See e.g.,* Dube Decl. Ex. A ("[y]ou'll feel like the real thing in this Cartier replica bracelet").

7

registered designs[13]; and (vi) Defendants have failed to produce accurate sales and cost records. There can be no more telling evidence of bad faith.

As has also been the case throughout this litigation, Defendants attempt to rebut Plaintiffs' showing of bad faith by mischaracterizing and fabricating. Defs' Br. at 13. *First*, Defendants argue that willfulness cannot be established "because they sought the advice of counsel in 2004 before beginning to sell the jewelry products at issue," suggesting that they vetted each of the infringing items through their counsel. This argument presents a significant expansion of Defendants' newly found advice-of-counsel defense, which, prior to the filing of these opposition papers, had been limited to advice concerning Defendants' so-called "disclaimer".[14] Even if the Court entertains this defense, there is not one shred of evidence that Defendants sought the advice of counsel with respect to the design of any *specific* piece of jewelry at issue in these actions. Indeed, Defendant Castaneda's own testimony directly contradicts this — "I don't make [the products], so I don't have to [clear the products with anyone]". Ederer Decl. Ex. A at 174:2-17. *Second*, Defendants contend that willfulness cannot be established because an "effective disclaimer" has been posted on their website. As Plaintiffs pointed out in their opposition to Defendants' motion for summary judgment, it is Defendants' burden to establish the effectiveness of their disclaimer, which they have utterly failed to do. *Third*, Defendants argue that willfulness cannot be established because they stopped selling a handful of Yurman items in 2005. The mere fact that Defendants claim to have stopped selling items that infringed Yurman's copyrights three years ago, none of which are involved in this case, does not change the fact that Defendants are selling over five hundred products that infringe

---

[13] *See e.g.,* Yurman Decl. Ex. I ("[t]he original piece retails for hundreds of dollars and now you can get *the same designer's look* for a fraction of the cost"); Dube Decl. Ex. L ("[a]lthough not 100 percent Cartier *you still get 100 percent of the look and feel*"); Rapone Decl. Ex. B ("this ring . . . evokes the *same* understated elegance [as Bulgari's genuine design]").

[14] Defendants' Memorandum of Law In Support of Motion for Partial Summary Judgment at 29.

8

Plaintiffs' intellectual property rights today.[15]

The one fact that Defendants do not refute, and will never be able to get around, is that their entire business mode is deliberately premised on exploiting and misappropriating Plaintiffs' world famous intellectual property. No amount of protestation or fabrication gets around that fact.

## V. YURMAN IS ENTITLED TO SUMMARY JUDGMENT DISMISSING DEFENDANTS' COUNTERCLAIM AGAINST YURMAN

In response to Yurman's motion for summary judgment dismissing Defendants' unsubstantiated counterclaim for cancellation of each of the twelve U.S. copyright registrations on which Yurman bases its copyright infringement claims, Defendants attempt to distance themselves from their defamatory allegations directed at Mr. David Yurman. Rather than addressing the merits of Yurman's argument — Defendants' utter failure to produce a shred of evidence to support their allegation that each of the Yurman copyrighted designs preexisted "in substantially the same form" prior to their creation by Yurman (not to mention their admitted failure to have any such evidence in hand when they made these allegations in the first place) — Defendants argue that Yurman "misunderstands" or "deliberately attempts to recast" their counterclaim. Defs' Br. at 14. There is nothing to misunderstand. In a classic "fraud on the copyright office" pleading, Defendants alleged, *not* upon information or belief, but as a matter of fact, that *"David Yurman . . . falsely represented to the copyright office* that David Yurman was the author of the designs which were the subject" of the copyright registrations at issue in this case. Defendants' Answer and Counterclaim ¶ 23.

Further, regardless of how Defendants wish to characterize their pleading, the fact remains that they have still failed to introduce any evidence to support the allegation that any of Yurman's copyrighted designs preexisted "in substantially the same form" prior to their registration by Yurman. To substantiate this claim, Defendants must point to individual preexisting jewelry pieces

---

[15] *See* Counter-Statement of Material Facts ¶ 13.

9

that contain the same unique combination of design elements that make up each of the Yurman copyrighted designs. Unable to make this showing, Defendants fall back on a mantra long discredited in this Circuit — that "Yurman's copyrighted designs are not sufficiently 'original' to be copyrightable'" because the individual design elements, which Yurman combined into unique and innovative designs, can be found in jewelry history.[16] Defs' Br. at 14. In particular, Defendants argue that the following images collected from various historical jewelry books, not one of which looks like any of the Yurman copyrighted designs (*compare* Zarin Decl. Exs. 7-9 *with* Yurman Decl. Exs. A-L; 56.1 Statement ¶ 45), support their claim that each of Yurman's copyrighted designs preexisted "in substantially the same form":



Indeed, Defendants' paltry showing is not only wholly insufficient to maintain their counterclaim, but reveals the frivolity of Defendants' pleading and warrants the imposition of sanctions.

## CONCLUSION

For all the reasons set forth above and in Plaintiffs' moving papers, Plaintiffs respectfully request that the Court grant their motion for summary judgment in its entirety.

---

[16] *See PAJ*, 262 F.3d at 109-10 (defendant's argument "misses the point", in that "the originality in Yurman's . . . designs inheres in the ways Yurman has recast and arranged [common] elements").

Dated: New York, New York  
July 17, 2008

ARNOLD & PORTER LLP

By: _/s/ Louis S. Ederer_  
Louis S. Ederer  
John Maltbie  
Matthew T. Salzmann  
399 Park Avenue  
New York, New York 10022  
Telephone: (212) 715-1000  
Facsimile: (212) 715-1399

*Attorneys for Plaintiffs*

11